INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS et al. v. NATIONAL LABOR RELATIONS BOARD.

No. 8267.

Circuit Court of Appeals, Sixth Circuit.

June 28, 1939.

Isaac L. Straus, of Baltimore, Md., and John H. Clippinger, of Cincinnati, Ohio (Taft, Stettinius & Hollister, of Cincinnati, Ohio, and Isaac Lobe Straus and Sigmund Levin, both of Baltimore, Md., on the brief), for petitioners.

Philip G. Phillips, of Cincinnati, Ohio, (Charles Fahy and Robert B. Watts, both of Washington, D. C., and Philip G. Phillips, of Cincinnati, Ohio, on the brief), for respondent.

Before HICKS, SIMONS, and ALLEN, Circuit Judges.

HICKS, Circuit Judge.

International Brotherhood of· Electrical Workers and International Brotherhood of Electrical Workers, Local Union 876, filed their petition in this court to review and set aside a Supplemental Decision and

Second Direction of Election issued by The National Labor Relations Board. The Board moved to dismiss the petition upon the ground that this court has no jurisdiction to entertain it. A transcript of the proceedings before the Board sufficient for present purposes has been filed.

Petitioners aver that Local Union 876 is an organization of wage workers and a constituent of I. B. E. W. and that both organizations are affiliated with the American Federation of Labor; that Local Union 876 is composed of wage workers in the employ of Consumers Power Company, a public utility corporation.

On February 2, 1938, I. B. E. W. filed with the Regional Director a petition alleging that a question affecting commerce had arisen concerning the representation of employees of the Company and requesting an investigation and certification of representatives for collective bargaining.

Pursuant to Sec. 9(c) of the National Labor Relations Act, 29 U.S.C.A. § 159 (c), the Board directed an investigation and authorized a hearing which was participated in by petitioners and the Utilities Workers Organizing Committee, another labor organization composed of employees of the Company and affiliated with the Congress for Industrial Organization. Both these organizations claimed to represent the employees of the Company.

The Board found that a question affecting commerce had arisen concerning the representation of the Company's employees and directed that an election by secret ballot be conducted under the supervision of the Regional Director to determine whether the employees desired to be represented by the I. B. E. W. or by the U. W. O. C. or by neither. The Regional Director conducted the election and reported to the Board the result as follows:

Total Number of Employees Eligible 2,977
Total Number of Ballots Cast...... 2,806
Total Number of Votes for I. B. E. W. ......................... 1,072
Total Number of Votes for U. W. O. C. ........................... 1,164
Total Number of Votes for Neither.. 506
Total Number of Challenged Ballots 52
Total Number of Blank Ballots...... 1
Total Number of Void Ballots ...... 11

The result indicated that a majority of the voters desired to bargain collectively but that neither organization had received a majority of the votes cast. Thereupon, over the protest and objection of petitioners, the Board promulgated what is styled a "Supplemental Decision and Second Direction of Election." The Board directed "that as a part of the investigation authorized by the Board to determine representatives for the purposes of collective bargaining with Consumers Power Company * * * an election by secret ballot shall be conducted * * * among all the employees of the Company, excluding * * * to determine whether or not they desire to be represented by Utility Workers Organizing Committee for the purposes of collective bargaining."

It is this "Second Direction of Election" which petitioners seek to have reviewed and set aside. We are not concerned here with unfair labor practices as between employer and employee set out in Sec. 10 of the Act, 29 U.S.C.A. § 160. We are dealing with the procedure for the designation of representatives of employees for purposes of collective bargaining, described in Sec. 9, a concededly different matter. It is the policy of the United States, set forth in the third paragraph of Sec. 1 of the Act, 29 U.S.C.A. § 151 to encourage the practice and procedure of collective bargaining and to protect the exercise by workers of full freedom of association, self organization and designation of representatives of their own choosing for the purpose of negotiating the terms and conditions of their employment, or other mutual aid or protection. In National Labor Board v. Pennsylvania Greyhound Lines, 303 U.S. 261, at page 265, 58 S.Ct. 571, 574, 82 L.Ed. 831, 115 A.L.R. 307, the court said:

"The history of the Act and its language show that its ruling purpose was to protect interstate commerce by securing to employees the rights established by section 7, 29 U.S.C.A. § 157, to organize, to bargain collectively through representatives of their own choosing, and to engage in concerted activities for that and other purposes. National Labor Relations Board v. Jones & Laughlin Steel Corp., 301 U.S. 1, 23, 33, 57 S.Ct. 615, 617, 622, 81 L.Ed. 893, 108 A.L.R. 1352. This appears both from the formal declaration of policy in § 1 of the Act, National Labor Relations Board v. Jones & Laughlin Steel Corp., supra, 301 U.S. 1, at pages 22–24, 57 S.Ct. 615, 617, 81 L.Ed. 893, 108 A.L.R. 1352, and from section 7, in itself a declara-

tion of the policy which, in conjunction with section 10(c) [29 U.S.C.A. § 160(c)], it adopts as the controlling guide to administrative action."

Section 7 of the Act guarantees to employees the right to bargain collectively through representatives of their own choosing and to engage in concerted activities, for the purposes of collective bargaining or other mutual aid or protection. Associated Press v. Labor Board, 301 U.S. 103, 123, 57 S.Ct. 650, 81 L.Ed. 953; National Labor Board v. Jones & Laughlin Steel Corp., 301 U.S. 1, 33, 57 S.Ct. 615, 81 L.Ed. 893, 108 A.L.R. 1352. It was said in the Jones & Laughlin case that this is a fundamental right. See also Texas & N. O. R. Co. v. Brotherhood of Railway & S. S. Clerks, 281 U.S. 548, 571, 50 S.Ct. 427, 74 L.Ed. 1034.

Having made the guaranty, it was necessary that the Congress should adopt a procedure for the selection of such representatives. To this end, Sec. 9(a) provides that representatives designated or selected for the purposes of collective bargaining by the majority of the employees in a unit appropriate for such purposes, shall be the exclusive representatives of all the employees in such unit for the purposes of collective bargaining, etc. There is thus provided the simple American principle of majority rule. Virginian Ry. Co. v. System Federation No. 40, etc., 4 Cir., 84 F.2d 641, 652.

By Sec. 9(c) it is provided that whenever a question affecting commerce arises concerning the representation of employees, the Board may investigate such controversy and certify to the parties, in writing, the name or names of the representatives that have been designated or selected. This section further provides that the Board may take a secret ballot of employees to ascertain such representatives.

The order complained of purports to have been promulgated under this section. We think the order was illegal and that the proposed election was unfair in effect. It was in the teeth of the policy formulated in the statute, that the employees should be protected in the exercise of full freedom of designation of representatives of their own choosing. The employee was not given full freedom of choice. If he voted he could either ratify or reject the nominee of the Board but if he rejected it he was through. He had no alternative,—he could not choose for himself. He could take the representative offered him or none at all,—a parallel of Hobson's choice.

Moreover, the order violates the "majority rule" provided by Sec. 9(a). The intention of this section is that a majority of those voting should select their representatives. If a majority should indicate by their ballots that they did not desire to be represented by the U. W. O. C., nothing has been accomplished. No selection of representatives has been made and collective bargaining falls, notwithstanding that in the first election 2,238 out of 2,806 voters indicated their desire for collective bargaining. The purpose of the election was to select, not to reject, representatives. Nothing more need be said touching the invalidity of the order.

Respondent urges that the Act makes no provision for judicial review in the instant case; that petitioners' right of review is by Sec. 9(d) to be held in abeyance until a final order in an unfair labor practice controversy, Sec. 10(a), which in some degree or manner involves petitioners' complaint, comes up for review. But there is no controversy here over labor practices as between the Company and its employees. Indeed, it is not shown that any such controversy exists. It may never arise, or if it should, it may never be presented here.

In this situation, does this court have jurisdiction to review the order complained of, which as we have pointed out, destroys the right of petitioners, guaranteed by Sec. 7 of the Act, in the exercise of full freedom to bargain collectively with the Company through representatives of their own choosing? We think it does. We cannot think that the Congress overlooked this important matter. The right of employees to choose their own representatives for collective bargaining was generally recognized and conceded long before it was guaranteed by the National Labor Relations Act, 29 U.S.C.A. § 151 et seq. See the discussion in National Labor Board v. Jones & Laughlin Steel Corp., 301 U.S. 1 at page 33, 57 S.Ct. 615, 81 L.Ed. 893, 108 A.L.R. 1352. This essential property right was not only guaranteed but was safeguarded; otherwise the Act itself would be subject to serious inquiry as to whether it violates the due process clause of the Fifth Amendment, U.S.C.A.Const.

Section 10(f) provides,—

"Any person aggrieved by a final order of the Board granting or denying in whole or in part the relief sought may obtain a review of such order in any circuit court of appeals of the United States in the circuit wherein the unfair labor practice in question was alleged to have been engaged in or wherein such person resides or transacts business * * * by filing in such court a written petition praying that the order of the Board be modified or set aside."

Petitioners are "persons" as defined in Section 2(1) of the Act, 29 U.S.C.A. § 152(1). They reside and transact business in this circuit. For the reasons above indicated they are justly aggrieved by the order of the Board complained of, which denied to them their rights under Sections 7 and 9 of the Act, 29 U.S.C.A. §§ 157, 159.

Respondents insist that the order is not final but it was final not only in its effect but in that it was the last order to be made under the procedure set out in the Act for the determination of representatives of employees for the purposes of collective bargaining with the Company. It is true that if the election had been held it was the duty of the Board to certify the result; but a certificate is not an order.

Finally, it is said that the phrase "wherein the unfair labor practice in question was alleged to have been engaged in" found in Sec. 10(f), limits the right of judicial review of procedure involving unfair labor practices only, as described in Sec. 10 of the Act. It certainly permits a review of the procedure in such character of controversy but does not confine it thereto.

The Supreme Court did not so limit it in Consolidated Edison Co. v. Labor Board, 305 U.S. 197, 226, 59 S.Ct. 206, 83 L.Ed.——. See also the discussion touching jurisdiction under Sec. 10(f) found in In re National Labor Board, 304 U.S. 486, 493, 58 S.Ct. 1001, 82 L.Ed. 1482; and in Ford Motor Co. v. National Labor Board, 305 U.S. 364, 369, 59 S.Ct. 301, 83 L.Ed.——. While the case is before the court upon respondent's motion to dismiss for lack of jurisdiction, yet it has nevertheless been fully briefed and argued upon the merits. The facts are not disputed and we think that our conclusion as to

the jurisdictional question necessarily concludes the controversy.

It is therefore ordered that the order complained of be and the same is set aside.