## AMERICAN FEDERATION OF LABOR ET AL. v. NATIONAL LABOR RELATIONS BOARD.

No. 70.   Argued December 7, 8, 1939.—Decided January 2, 1940.

*Mr. Joseph A. Padway* for petitioners.

*Mr. Charles Fahy,* with whom *Solicitor General Jackson* and *Messrs. Robert B. Watts* and *Laurence A. Knapp* were on the brief, for respondent.

MR. JUSTICE STONE delivered the opinion of the Court.

The question decisive of this case is whether a certification by the National Labor Relations Board under

§ 9 (c) of the Wagner Act, 49 Stat. 449, 453, 29 U. S. C., Supp. IV, §§ 151–166, that a particular labor organization of longshore workers is the collective bargaining representative of the employees in a designated unit, composed of numerous employers of longshore workers at Pacific Coast ports, is reviewable by the Court of Appeals for the District of Columbia by the procedure set up in § 10 (f) of the Act.

Petitioners, International Longshoremen's Association, and its affiliate, Pacific Coast District International Longshoremen's Association No. 38, are labor organizations, both affiliated with the petitioner, American Federation of Labor (A. F. of L.). In January, 1938, the International Longshoremen's & Warehousemen's Union, District No. 1, a labor organization affiliated with the Congress of Industrial Organization (C. I. O.) petitioned the Board for an investigation concerning the representation of longshoremen on the Pacific Coast, and that the Board certify the name of the appropriate representative for collective bargaining as provided in § 9 (c) of the Wagner Act.

The Board directed an investigation with appropriate hearings, and a consolidation of the proceeding for purposes of hearing with two other proceedings already initiated by locals of the Longshoremen's Union. Petitioners were made parties to the consolidated proceedings and participated in the hearings, at the conclusion of which the Board made its findings of fact and of law and certified that the workers who do longshore work in the Pacific Coast ports for the employers which are members of five designated employer associations of Pacific Coast shipowners or of waterfront employers, constitute a unit appropriate for the purposes of collective bargaining within the meaning of § 9 (b) of the Act. It also certified that the C. I. O. affiliate, Longshoremen's Union,

District No. 1, is the exclusive bargaining representative of all the workers in such unit within the meaning of the Act. In the Matter of Shipowners' Association of the Pacific Coast, 7 N. L. R. B. 1002.

The effect of the certification, as petitioner alleges, is the inclusion in a single unit, for bargaining purposes, of all of the longshore employees of the members of the employer associations doing business at the west coast ports of the United States, and to designate the C. I. O. affiliate as their bargaining representative so that in the case of some particular employers, their workers who are not organized or represented by the C. I. O. affiliate have been deprived of opportunity to secure bargaining representatives of their own choice. Although the petitioners who are affiliated with the A. F. of L. assert that they have in fact been selected as bargaining representatives by a majority of the employees of their respective employers, petitioners allege that they have nevertheless been prevented from acting in that capacity by the Board's designation of the C. I. O. affiliate as the exclusive representative of such employees.

The present suit was begun by petition to the Court of Appeals for the District of Columbia in which the petitioners set forth, in addition to the facts already detailed, that they were aggrieved by the "decision and order of certification of the Board" in that the certificate is contrary to fact and to law; that the Wagner Act does not contemplate or authorize "the designation by the Board of an employee unit constituting all the employees of different employers in different and distant geographical districts of the United States." The petition prayed that the "order of certification" be set aside, in so far as it attempts to designate a single exclusive bargaining representative for longshore employees of many employers on the Pacific Coast and denies to a majority of the longshore

employees of a single employer the right to select one of the petitioners as their exclusive bargaining representative.

The Court of Appeals dismissed the petition as not within the jurisdiction to review orders of the Board conferred upon it by § 10 of the Wagner Act. 103 F. 2d 933. We granted certiorari October 9, 1939, because of the importance of the question presented and to resolve an alleged conflict of the decision below with that of the Court of Appeals for the Sixth Circuit, in *International Brotherhood of Electrical Workers* v. *National Labor Relations Board*, 105 F. 2d 598.

The Court of Appeals for the District of Columbia, like the several circuit courts of appeals, is without the jurisdiction over original suits conferred on district courts by § 24 of the Judicial Code, as amended. 28 U. S. C., § 41. Such jurisdiction as it has, to review directly the action of administrative agencies, is specially conferred by legislation relating specifically to the determinations of such agencies made subject to review, and prescribing the manner and extent of the review. Here, the provisions of the Wagner Act, § 10 (f), which gives a right of review to "any person aggrieved by a final order of the Board," determines the nature and scope of the review by the court of appeals.

The single issue which we are now called on to decide is whether the certification by the Board is an "order" which, by related provisions of the statute, is made reviewable upon petition to the Court of Appeals for the District or in an appropriate case to a circuit court of appeals. The question is distinct from another much argued at the Bar, whether petitioners are precluded by the provisions of the Wagner Act from maintaining an independent suit in a district court to set aside the Board's action because contrary to the statute, and be-

cause it inflicts on petitioners an actionable injury otherwise irreparable.

By the provisions of the Wagner Act the Board is given two principal functions to perform. One, defined by § 9, which as enacted is headed "Representatives and Elections," is the certification, after appropriate investigation and hearing, of the name or names of representatives, for collective bargaining, of an appropriate unit of employees. The other, defined by § 10, which as enacted is headed "Prevention of Unfair Labor Practices," is the prevention by the Board's order after hearing and by a further appropriate proceeding in court, of the unfair labor practices enumerated in § 8. One of the outlawed practices is the refusal of an employer to bargain with the representative of his employees. § 8 (5).

Certification involves, under § 9 (b), decision by the Board whether "the unit appropriate for the purposes of collective bargaining shall be the employer unit, craft unit, plant unit, or subdivision thereof," and the ascertainment by the Board under § 9 (c) of the bargaining representative who, under § 9 (a) must be "designated or selected . . . by the majority of the employees in the unit appropriate for such [bargaining] purposes." The Board is authorized by § 9 (c) "whenever a question affecting commerce arises concerning the representation of employees" to investigate "such controversy" and to certify the names of the appropriate bargaining representatives. In conducting the investigation it is required to provide for appropriate hearing upon due notice "and may take a secret ballot of employees, or utilize any other suitable method" of ascertaining such representatives. By § 9 (d) whenever an order of the Board is made pursuant to § 10 (c) directing any person to cease an unfair labor practice and there is a petition for enforcement or review of the order by a court the

Board's "certification and the record of such investigation" is to be included in the transcript of the entire record required to be filed under § 10 (e) or (f), and the decree of the court enforcing, modifying or setting aside the order of the Board is to be made and entered upon the pleadings, testimony and proceedings set forth in the transcript.

It is to be noted that § 9, which is complete in itself, makes no provision, in terms, for review of a certification by the Board and authorizes no use of the certification or of the record in a certification proceeding, except in the single case where there is a petition for enforcement or review of an order restraining an unfair labor practice as authorized by § 10 (c). In that event the record in the certification proceeding is included in the record brought up on review of the Board's order restraining an unfair labor practice. It then becomes a part of the record upon which the decree of the reviewing court is to be based.

All other provisions for review of any action of the Board are found in § 10 which as its heading indicates relates to the prevention of unfair labor practices. Nowhere in this section is there mention of investigations or certifications authorized and defined by § 9. Section 10 (a) authorizes the Board "to prevent any person from engaging in any unfair labor practice (listed in section 8) affecting commerce." Section 10 (b) prescribes the procedure of the Board when any person is charged with engaging in, any unfair labor practice, and requires that the person so charged shall be served with a complaint and notice of hearing by the Board with opportunity to file an answer and be heard. Section 10 (c) directs the Board, if it is of opinion, as the result of the proceedings before it, that any person named in the complaint has engaged in an unfair labor practice "to issue" "an order" directing that person to cease the practice and command-

ing appropriate affirmative action. If the Board is of opinion that there has been no unfair labor practice it is directed "to issue" "an order" dismissing the complaint. Section 10 (e) authorizes a petition to the appropriate federal court of appeals by the Board for the enforcement of its order prohibiting an unfair labor practice.

This brings us to the provisions for review of action taken by the Board in. § 10 (f) which is controlling in the present proceeding. That subdivision [1] appears as an integral part of § 10. All the other subdivisions relate exclusively to proceedings for the prevention of unfair labor practices. Both they and subdivision (f) are silent as to the proceedings or certifications authorized by § 9. Section 10 (f), providing for review, speaks only of a "final order of the Board." It gives a right to review to persons aggrieved by a final order upon petition to a court of appeals in the circuit "wherein the unfair labor prac-

---

[1] "(f) Any person aggrieved by a final order of the Board granting or denying in whole or in part the relief sought may obtain a review of such order in any circuit court of appeals of the United States in the circuit wherein the unfair labor practice in question was alleged to have been engaged in or wherein such person resides or transacts business, or in the Court of Appeals of the District of Columbia, by filing in such court a written petition praying that the order of the Board be modified or set aside. A copy of such petition shall be forthwith served upon the Board, and thereupon the aggrieved party shall file in the court a transcript of the entire record in the proceeding, certified by the Board, including the pleading and testimony upon which the order complained of was entered and the findings and order of the Board. Upon such filing, the court shall proceed in the same manner as in the case of an application by the Board under subsection (e), and shall have the same exclusive jurisdiction to grant to the Board such temporary relief or restraining order as it deems just and proper, and in like manner to make and enter a decree enforcing, modifying, and enforcing as so modified, or setting aside in whole or in part the order of the Board; and the findings of the Board as to the facts, if supported by evidence, shall in like manner be conclusive."

tice in question was alleged to have been engaged in or wherein such person resides or transacts business, or in the Court of Appeals of the District of Columbia." It directs that the order shall be reviewed on the entire record before the Board "including the pleadings and testimony" upon which the order complained of was entered, although no complaint or other pleading is mentioned by § 9 relating to representation proceedings and certificates. Subdivision (f) provides that upon petition for review by an aggrieved person "the court shall proceed in the same manner as in the case of an application by the Board under subdivision (e)," and it is given the same jurisdiction "to grant to the Board such temporary relief or restraining order as it deems just and proper, and in like manner to make and enter a decree enforcing, modifying, and enforcing as so modified, or setting aside in whole or in part the order of the Board." See, *Ford Motor Co.* v. *National Labor Relations Board*, 305 U. S. 364, 369.

In analyzing the provisions of the statute in order to ascertain its true meaning, we attribute little importance to the fact that the certification does not itself command action. Administrative determinations which are not commands may for all practical purposes determine rights as effectively as the judgment of a court, and may be reëxamined by courts under particular statutes providing for the review of "orders." See *Rochester Telephone Corp.* v. *United States*, 307 U. S. 125, 130, 135, *et seq.; Federal Power Comm'n* v. *Pacific Power & Light Co.*, 307 U. S. 156. We must look rather to the language of the statute, read in the light of its purpose and its legislative history, to ascertain whether the "order" for which the review in court is provided, is contrasted with forms of administrative action differently described as a purposeful means of excluding them from the review provisions.

Here it is evident that the entire structure of the Act emphasizes, for purposes of review, the distinction between an "order" of the Board restraining an unfair labor practice and a certification in representation proceedings. The one authorized by § 10 may be reviewed by the court on petition of the Board for enforcement of the order, or of a person aggrieved, in conformity to the procedure laid down in § 10, which says nothing of certifications. The other, authorized by § 9, is nowhere spoken of as an order, and no procedure is prescribed for its review apart from an order prohibiting an unfair labor practice. The exclusion of representation proceedings from the review secured by the provisions of § 10 (f) is emphasized by the clauses of § 9 (d), which provide for certification by the Board of a record of a representation proceeding only in the case when there is a petition for review of an order of the Board restraining an unfair labor practice. The statute on its face thus indicates a purpose to limit the review afforded by § 10 to orders of the Board prohibiting unfair labor practices, a purpose and a construction which its legislative history confirms.

Upon the introduction of the bill which was enacted as the Wagner Act, Congress had pointedly brought to its attention the experience under Public Resolution 44 of June 19, 1934, 48 Stat. 1183. That resolution authorized the National Labor Relations Board, predecessor of respondent, "to order and conduct elections" by employees of any employer to determine who were their representatives for bargaining purposes. Section 2 provided that any order of the Board should be reviewed in the same manner as orders of the Federal Trade Commission under the Federal Trade Commission Act. The reports of the Congressional committees upon the bill which became the Wagner Act refer to the long delays in the procedure prescribed by Resolution 44, resulting from applications to the federal appellate courts for review of orders for elec-

tions.[2] And in considering the provisions of § 9 (d) the committee reports were emphatic in their declaration that the provisions of the bill for court review did not extend to proceedings under § 9 except as incidental to review of an order restraining an unfair labor practice under § 10.[3]

---

[2] "WEAKNESSES IN EXISTING LAW. . . . (6) *Obstacles to elections.*— Under Public Resolution 44, any attempt by the Government to conduct an election of representatives may be contested *ab initio* in the courts, although such election is in reality merely a preliminary determination of fact. This means that the Government can be delayed indefinitely before it takes the first step toward industrial peace. After almost a year not a single case, in which a company has chosen to contest an election order of the Board, has reached decision in any circuit court of appeals." Sen. Rep. No. 573, Committee on Education and Labor, 74th Cong., 1st Sess., pp. 5, 6.

After referring to the procedure for review under Public Resolution 44, the House Committee declared: "The weakness of this procedure is that under the provision for review of election orders employers have a means of holding up the election for months by an application to the circuit court of appeals. . . . At the present time 10 cases for review of the Board's election orders are pending in the circuit courts of appeals. Only three have been argued and none have been decided." House Rep., No. 1147, Committee on Labor, 74th Cong., 1st Sess., p. 6.

[3] "There is no more reason for court review prior to an election than for court review prior to a hearing. But if subsequently the Board makes an order predicated upon the election, such as an order to bargain collectively with elected representatives, then the entire election procedure becomes part of the record upon which the order of the Board is based, and is fully reviewable by an aggrieved party in the Federal courts in the manner provided in section 10. And this review would include within its scope the action of the Board in determining the appropriate unit for purposes of the election. This provides a complete guarantee against arbitrary action by the Board." Sen. Rep. 573, Committee on Education and Labor, 74th Cong., 1st Sess., p. 14.

"As previously stated in this report, the efficacy of Public Resolution 44 has been substantially impaired by the provision for court review of election orders prior to the holding of the election. Section 9 (d) of the bill makes clear that there is to be no court review prior to the holding of the election, and provides an exclusive, complete, and

The bill was similarly explained on the Senate floor by the committee chairman who declared: "It provides for review in the courts only after the election has been held and the Board has ordered the employer to do something predicated upon the results of an election." 79 Cong. Rec., 7658. The conclusion is unavoidable that Congress, as the result of a deliberate choice of conflicting policies, has excluded representation certifications of the Board from the review by federal appellate courts authorized by the Wagner Act except in the circumstances specified in § 9 (d).

An argument, much pressed upon us, is, in effect, that Congress was mistaken in its judgment that the hearing before the Board in proceedings under § 9 (c), with review only when an order is made under § 10 (c) directing the employer to do something "provides an appropriate safeguard and opportunity to be heard," House Rep., p. 23, and that "this provides a complete guarantee against arbitrary action by the Board," Sen. Rep., p. 14. It seems to be thought that this failure to provide for a court review is productive of peculiar hardships, which were perhaps not foreseen in cases where the interests of rival unions are affected.[4] But these are arguments to be addressed to

adequate remedy whenever an order of the Board made pursuant to section 10 (c) is based in whole or in part upon facts certified following an election or other investigation pursuant to section 9 (c). The hearing required to be held in any such investigation provides an appropriate safeguard and opportunity to be heard. Since the certification and the record of the investigation are required to be included in the transcript of the entire record filed pursuant to section 10 (e) or (f), the Board's actions and determinations of fact and law in regard thereto will be subject to the same court review as is provided for its other determinations under sections 10 (b) and 10 (c)." House Rep., No. 1147, Committee on Labor, 74th Cong., 1st Sess., p. 23.

[4] Congress apparently recognized that representation proceedings under § 9(c) might involve rival unions. The House Committee said: "Section 9 (c) makes provision for elections to be conducted by the Board or its agents or agencies to ascertain the representatives of em-

Congress and not the courts. The argument too that Congress has infringed due process by withholding from federal appellate courts a jurisdiction which they never possessed is similarly without force. *Shannahan* v. *United States,* 303 U. S. 596; see *In re National Labor Relations Board,* 304 U. S. 486, 495.

The Board argues that the provisions of the Wagner Act, particularly § 9 (d), have foreclosed review of its challenged action by independent suit in the district court, such as was allowed under other acts providing for a limited court review in *Shields* v. *Utah Idaho Central R. Co.,* 305 U. S. 177, and in *Utah Fuel Co.* v. *National Bituminous Coal Comm'n,* 306 U. S. 56; cf. *Myers* v. *Bethlehem Shipbuilding Corp.,* 303 U. S. 41. But that question is not presented for decision by the record before us. Its answer involves a determination whether the Wagner Act, in so far as it has given legally enforceable rights, has deprived the district courts of some portion of their original jurisdiction conferred by § 24 of the Judicial Code. It can be appropriately answered only upon a showing in such a suit that unlawful action of the Board has inflicted an injury on the petitioners for which the law, apart from the review provisions of the Wagner Act, affords a remedy. This question can be properly and adequately considered only when it is brought to us for review upon a suitable record.

*Affirmed.*

---

ployees. The question will ordinarily arise as between two or more bona fide organizations competing to represent the employees, but the authority granted here is broad enough to take in the not infrequent case where only one such organized group is pressing for recognition, and its claim of representation is challenged." H. Rep. No. 1147, Committee on Labor, 74th Cong., 1st Sess., p. 22.