**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**PACIFIC AMERICAN SHIPOWNERS ASSOCIATION, Pacific Maritime Association, Alaska Steamship Company, American Mail Line, Ltd., Pope & Talbot, Inc., and National Union of Marine Cooks & Stewards, Respondents.**

No. 13386.

United States Court of Appeals, Ninth Circuit.

Jan. 22, 1955.

George J. Bott, General Counsel, David P. Findling, Associate General Counsel, Marcel Mallet-Prevost, Asst. General Counsel and Arnold Ordman, Attorney, NLRB, Washington, D. C., Louis S. Penfield, Attorney, NLRB, San Francisco, Cal., for petitioner.

Allan Brotsky, San Francisco, Cal., for respondent National Union of Marine Cooks & Stewards.

Norman Leonard, San Francisco, Cal., for International Longshoremen's & Warehousemen's Union, petitioner for intervention.

John Paul Jennings, San Francisco, Cal., for respondent Marine Cooks & Stewards, A.F.L.

Richard Ernst, San Francisco, Cal., for respondent Pacific American Shipowners Ass'n.

Before HEALY, BONE, and POPE, Circuit Judges.

Order Denying Motion for Rule to Show Cause, and Petition to Intervene.

PER CURIAM.

On consideration thereof, and by direction of the Court, it is ordered that the (1) motion of National Union of Marine Cooks and Stewards for rule to show cause, and (2) petition of International Longshoremen's and Warehousemen's Union to intervene herein be, and each of them hereby is denied.

Separate Opinion of POPE, Circuit Judge.

In concurring in the making of the foregoing order I consider it appropriate to set forth as briefly as possible my reasons for such action. On December 16, 1954, the National Labor Relations Board, after a hearing at which all interested parties were represented, and acting upon a representation petition asking for certification of a bargaining representative of all unlicensed seagoing personnel on ships of the companies which are members of Pacific Maritime Association (here called PMA), determined that all unlicensed seagoing employees on vessels operated by members of PMA constituted a unit appropriate for the purposes of collective bargaining within the meaning of § 9b of the National Labor Relations Act. In doing so, the Board rejected the contention of International Longshoremen's and Warehousemen's Union (ILWU) and of National Union of Marine Cooks and Stewards (NUMCS) that certification should be made of a bargaining representative of steward personnel only, with the further contention that if the Board found a wider unit appropriate, the stewards be permitted to vote separately concerning representation.

Pursuant to the Board's determination and direction an election was scheduled to be held beginning January 17, 1955, at which provision would be made for all such unlicensed personnel on such vessels to indicate their choice between Seafarers International Union, Pacific District, (SFU), on the one hand, and ILWU, on the other. Seafarers International Union, Pacific District, is a convenient name to indicate a group comprising Marine Firemen's Union, Sailors Union of the Pacific, and Marine Cooks and Stewards, A.F.L.

This application was made and entitled in the above cause on January 11, 1955. It is made on behalf of National Union of Marine Cooks and Stewards, a respondent in the enforcement proceedings hereafter referred to, and it seeks an order of this court to the effect that the Board shall conduct no election for the purpose of certifying an exclusive collective bargaining representative of employees in the stewards department of such vessels unless in such election the determination of the collective bargaining representative for the stewards department employees would be based upon the vote of those employees alone.

It is noted that by this application it is sought to have this court require the Board to determine as the appropriate bargaining unit a group which the Board

has heretofore rejected as the appropriate unit.

The Supreme Court has repeatedly announced that § 9 of the Act vests power in the Board, not in the court, to select the method of determining what unit employees desire as a bargaining agent. National Labor Relations Board v. Falk Corp., 308 U.S. 453, 458, 60 S.Ct. 307, 84 L.Ed. 396.[1] § 9(b) of the Act vests in the Board the exclusive power to determine the appropriate unit for bargaining purposes and its exercise of this power is not subject to court review. A. F. of L. v. National Labor Relations Board, 308 U.S. 401, 60 S.Ct. 300, 84 L. Ed. 347.

The applicant union here without questioning the general application of these authorities, asserts that this particular case is different by reason of the provisions of a certain consent decree entered in the above entitled matter on July 9, 1952. That decree was entered in a proceeding initiated in this court by petition of the Board for the enforcement of its order based on findings that the respondents in that proceeding had engaged in certain unfair labor practices. The decree of this court enforced the Board's order by enjoining PMA from recognizing NUMCS as exclusive representative of the stewards department employees upon said vessels "unless and until said organization shall have been certified by the Board." The consent decree also contained additional provisions apparently intended to provide the mechanics for accomplishing compliance with the foregoing provisions of the decree. It recited that these additional provisions were designed to remove "impairments to the conduct of a free and impartial election that may be ordered" as contemplated in the injunctive portion of the decree.

It was indicated at the argument upon the present application that these additional portions of the decree were inserted by consent of all parties upon the representation to the court that if this or

some similar mechanics were not provided the respondent NUMCS or its members would picket the waterfront and that all shipping operated by the respondent employers would come to a halt further making difficult or impossible the holding of elections to permit the certification by the board contemplated by the decree. These additional provisions thus inserted in the consent decree provided with considerable detail for a nondiscriminatory hiring system relating to the employment of personnel in the stewards department. Paragraph 6 of the decree then recited: "The outline of terms and conditions of employment of cooks and stewards attached hereto as Exhibit H shall be immediately adopted, put into effect, and continued in effect, until a union has been duly certified by the National Labor Relations Board as the exclusive representative for collective bargaining purposes of employees in the Stewards Department of vessels covered thereby". The context of the whole decree discloses that these most unusual additional provisions relating to the terms and conditions of employment were intended to be but temporary and to serve until such time as the Board could conduct and complete an election for the purpose of certification.

Although it is noted that the paragraph last quoted, instead of reciting "until an election can be held", states: "until a union has been duly certified", etc., yet the succeeding paragraph of the decree refers to such hiring procedures as having been approved "so as to accomplish the objective of removing any impairments to the conduct of a free and impartial election."

As disclosed by the application, the election contemplated was held between February and May, 1954, and the majority of the employees voted against representation by any union. The applicant union now asserts that the provisions of paragraph 6 quoted above are still in effect since no union has been duly certi-

1. See also National Labor Relations Board v. P. Lorillard Co., 314 U.S. 512, 62 S.Ct. 397, 86 L.Ed. 380; National Labor Relations Board v. Int. Brotherhood, 308 U.S. 413, 60 S.Ct. 306, 84 L.Ed. 354.

fied as yet. Its argument further is that the language of that paragraph and of other paragraphs discloses that it was contemplated and in fact agreed by the board in consenting to the decree that any election should be one among stewards department employees only. The applicant union therefore says that this court should make the order now requested for the purpose of requiring the Board to observe the consent decree and says: "For the Board now to deny the very self determination which it was the purpose of the decree to grant is indeed for it to turn matters upside down, and to frustrate and violate this court's decree".

I think it is unnecessary now to consider whether this court ever had any jurisdiction to insert in its decree, whether by consent or otherwise, any provision for administering hiring procedures on the waterfronts.[2] I assume that though the provisions inserted in the decree if intended to serve temporarily during the period of transition necessary to enable the Board to initiate its certification processes, may have been appropriate, yet it cannot be said that the Board could, beyond such interim period, validly relinquish or qualify its statutory powers and duties under § 9 of the Act.

Congress alone may limit or qualify the exclusive power and discretion granted to the Board to determine the unit appropriate for the purpose of collective bargaining. We cannot construe the consent decree to have the continuing force and effect asserted by the applicant without convicting this court of usurping a jurisdiction which it does not have. United States v. Swift & Co., 286 U.S. 106, 52 S.Ct. 460, 76 L.Ed. 999, cited by applicants with respect to the effect of a consent decree, relates to relinquishing of rights by private parties and not to surrender of powers by a statutory board, and that case is not apposite.

It seems plain therefore that this court is without jurisdiction to grant the relief here prayed for. The practical reason given by the applicant union for seeking our intervention here is its statement that in consequence of the Board's present designation of the larger unit which includes not only stewards department employees but deck and engine department employees as well, the stewards department employees who make up the membership of the applicant union will be outnumbered and that their expressed desire to choose ILWU as the bargaining agent will certainly be over-ridden by the large number of other employees who will naturally favor Seafarers International Union. The latter, it is said, has a long history of discrimination against negro seamen; that large numbers of the applicant union's members, who are employees of the stewards department, are negroes; that if SIU continues its traditional policies these men will be denied union membership and in consequence will lose opportunities for employment.

The Board asserts that it has received assurance from SIU that the latter will refrain from its past discriminatory practices. Wholly apart from whether or not such an expression of good intentions may be relied on, it seems to me that applicant is unduly alarmed and that its negro members will not be without protection under the law even if the rival union wins the election and attempts to repudiate its promise to reform in respect to racial discrimination.

The unit ultimately designated under § 9(a) of the Act will be "the exclusive representative of all the employees". In this respect the Act is like that dealt with in Steele v. Louisville & N. R. Co., 323 U.S. 192, 65 S.Ct. 226, 230, 89 L.Ed. 173, where the court said: "The use of the word 'representative,' as thus defined and in all the contexts in which it is found, plainly implies that the representative is to act on behalf of all the employees which, by virtue of the statute, it undertakes to represent." Accordingly the court there granted effective relief

2. "However well adapted this order may have been to accomplish a common sense result, I do not see how power to issue it could exist." United States v. United States District Court, 9 Cir., 206 F.2d 303, concurring opinion at page 311.

against the attempted racial discrimination.

I think that the Labor Management Relations Act also furnishes adequate sanctions, not with respect to membership in the union,[3] but with respect to the right to employment which is the thing that is important here. If these negro seamen are denied employment in consequence of their inability to obtain membership in a union, "for reasons other than the failure of the employee to tender the periodic dues", the employer may be proceeded against for an unfair labor practice under § 8(a) (3) and the union would be subject to a like charge under § 8(b) (2). The applicant asserts that the constituent units of SIU have previously refused to dispatch for employment negro seamen and that negro employees may be excluded in the future because of a previously existing method of hiring whereby employers who are members of PMA have hired their employees exclusively from maritime union hiring halls. Applicant says that that procedure will exclude the negro employees.

If such procedure is adopted it will constitute an unfair labor practice under the rule of the many decisions in this and other courts which are collected in National Labor Relations Board v. F. H. McGraw & Co., 6 Cir., 206 F.2d 635, 639. Cf. Radio Officers' Union of Commercial Telegraphers Union, A.F.L. v. National Labor Relations Board, 347 U.S. 17, 47–48, 74 S.Ct. 323, 98 L.Ed. 455. Such an illegal hiring practice cannot be accomplished "through the device of requiring referral by the union or otherwise".

3. I think the last chapter on this question has not been written. When Shelley v. Kraemer, 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161, held that the Fourteenth Amendment prohibited state courts from enforcing restrictive covenants based on race or color, the Court in Hurd v. Hodge, 334 U.S. 24, 68 S.Ct. 847, 853, 92 L.Ed. 1187, declared such covenants equally unenforcible in the federal courts, refusing to presume "that the public policy of the United States manifests a lesser concern for the protection of such basic rights against discriminatory action of federal courts than against such action taken by the courts of the States." The court pointed to the portion of the Civil Rights Act which gives all citizens the same right "as is enjoyed by white citizens" to hold property. The Civil Rights Act, 42 U.S.C.A. § 1981, also grants equal rights to the benefit "of all laws and proceedings for the security of persons". A union which practices racial discrimination as a practical matter carries its policy into its collective bargaining agreements. It is a nice question whether the Labor Board may recognize or enforce such an agreement any more than a federal court may lend its aid to a racial restrictive covenant. This may well be a limitation upon the proviso to section 8(b) (1) (A) of the Act.