CENTRAL HUDSON GAS & ELECTRIC CORPORATION, Consolidated Edison Company of New York, Inc., Orange and Rockland Utilities, Inc., and Power Authority of the State of New York, Plaintiffs,

v.

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, Douglas M. Costle, as Administrator, U.S. Environmental Protection Agency, Eckardt C. Beck, Regional Administrator, Region II, U.S. Environmental Protection Agency, New York State Department of Environmental Conservation, and Peter A. A. Berle, Commissioner, New York State Department of Environmental Conservation, Defendants,

and

Hudson River Fishermen's Association, Intervenor-Defendant.

No. 77 Civ. 4870.

United States District Court, S. D. New York.

Feb. 10, 1978.

Le Boeuf, Lamb, Leiby & MacRae, New York City, for plaintiffs; G. S. Peter Bergen, Robert J. Glasser, New York City, of counsel.

Robert B. Fiske, Jr., U. S. Atty. for the Southern District of New York, New York City, for Federal defendants; Anne Sidamon-Eristoff, Asst. U. S. Atty., New York City, of counsel.

Louis J. Lefkowitz, Atty. Gen. of the State of New York, New York City, for State defendants; Paul S. Shemin, Asst. Atty. Gen., New York City, of counsel.

Butzel & Kass, New York City, for intervenor-defendant; Albert K. Butzel, New York City, of counsel.

OPINION

ROBERT L. CARTER, District Judge.

This is a suit by four power utilities that challenges the jurisdiction of the United States Environmental Protection Agency ("EPA") with regard to certain National Pollution Discharge Elimination System permits ("NPDES permits") presently pending before the EPA.[1] Plaintiffs' claim is that the EPA has been deprived of jurisdic-

---

1. The parties dispute in this litigation whether the EPA has already "issued" permits for these plants, or whether it has only made proposals for permits that have not yet been issued. This opinion, for the sake of brevity, refers to the documents that are now under consideration by the EPA as "permits," but I do not by this

tion by virtue of 33 U.S.C. § 1342(c)(1),[2] which is § 402(c)(1) of the Federal Water Pollution Control Act Amendments of 1972 (the "Act").[3] Plaintiffs have moved for summary judgment, and the defendants have cross-moved for dismissal on the grounds that the court lacks subject matter jurisdiction, or in the alternative, for summary judgment on the merits. The cross-motion for dismissal is granted.

*Facts*

The plaintiffs own and/or operate four electric generating plants situated on the banks of the Hudson River. Operation of such a plant requires that heat be continuously removed from the power generation system, and for that purpose, each of the plants has what is known as a "once-through" cooling system. That is, water is drawn in from the nearby river, circulated through elements of the plant, and is then discharged back into the river at an elevated temperature. Insofar as is relevant here, federal law requires that pollution of this kind can only be engaged in pursuant to an NPDES permit, which the EPA is empowered to issue. 33 U.S.C. §§ 1311(a) and 1342(a)(1). The EPA is given wide latitude to prescribe conditions for the permit in order to assure that the anti-pollution goals of the Act will be attained. 33 U.S.C. § 1342(a)(1) and (2).

Although the permit-issuing authority is vested in the first instance in the EPA, the Act envisions that ultimately the states will be the primary enforcers of federal clean water standards. If a state establishes a permit program that fully satisfies statutory requirements, the EPA is required to

approve the program,[4] and then to "suspend the issuance of permits . . . ." 33 U.S.C. § 1342(c)(1).[5]

The plaintiff utilities applied to the EPA for discharge permits for their four plants. Pursuant to 40 C.F.R. § 125.31, the regional staff prepared tentative determinations regarding the applications and formulated draft permits for the facilities. By May 1975, the office of Region II of the EPA had given public notice of its tentative determination and the draft permit for each of the applications. 40 C.F.R. § 125.32. Pursuant to the terms of the notice and the federal regulation, each plaintiff submitted to the EPA comments and data with regard to the permit for its facility.

Subsequent to these events, the EPA Regional Administrator issued, between February and July, 1975, a "Notice of Issuance of Final Determination" and an enclosed NPDES "Discharge Permit" for each plant. Each permit[6] contained a condition that the plant reduce by more than 90% the heat discharged into the river by the present cooling system, by dates that ranged from July 1, 1979 to July 1, 1981, depending on the plant. Meeting this requirement would necessitate that the utilities abandon the once-through cooling system in favor of a closed-cycle system that employs what are known as "cooling towers," large and costly structures that would have to be built next to the power stations by the utilities. Although not directly at issue in this suit, it is the heat reduction condition that the utilities object to, and this is the substantive basis of the utilities' challenge to the NPDES permits for their plants.

usage intimate any view as to whether or when a permit is "issued" by the EPA.

**2.** The subsection provides, in relevant part, that:

"Not later than ninety days after the date on which a State has submitted a program (or revision thereof) pursuant to subsection (b) of this section, the Administrator shall suspend the issuance of permits under subsection (a) of this section as to those navigable waters subject to such program . . . ."

**3.** 33 U.S.C. §§ 1251–1376. In the interests of convenience, all further citations of the provi-

sions of the 1972 amendments will refer only to the appropriate section of the U.S.Code.

**4.** 33 U.S.C. § 1342(a)(5) and (b).

**5.** For a more detailed description of the legislative structure of the National Pollution Discharge Elimination System, see *Save the Bay, Inc. v. Administrator of E.P.A.*, 556 F.2d 1282, 1284–85 (5th Cir. 1977).

**6.** *See* note 1, *supra*.

Following receipt of these notices and permits, defendants requested and were granted an "adjudicatory hearing," pursuant to both the notice itself and 40 C.F.R. § 125.36(b), to contest several of the provisions of the permit, including the heat reduction condition. No formal proceedings with regard to these hearings occurred until February, 1977, when a pre-hearing conference was held before an Administrative Law Judge.

At about the same time that the EPA was formulating permits for the plaintiffs' facilities, New York State, pursuant to 33 U.S.C. § 1342(b), was formulating a plan by which the New York State Department of Environmental Conservation ("DEC") would administer a discharge permit system in New York, superseding the EPA's program. The state's program was approved and became effective in October, 1975, after the EPA had promulgated the above-discussed "Notice of Issuance of Final Determination" and "Discharge Permit," but before any part of the adjudicatory hearings on those permits had occurred.

In conjunction with the EPA's approval of the state program, the DEC and Region II of the EPA entered into a Memorandum of Agreement regarding a number of areas of responsibility of the two agencies under the operation of the state-run program. Both the DEC and the EPA argue that by Article I of the Agreement, the two agencies agreed that the EPA would retain jurisdiction over those cases in which adjudicatory hearings were pending at the time the state program went into force. Although the language of the Agreement is ambiguous on this point, it is clear from their practice that the two agencies had this understanding. Since October, 1975, the EPA has forwarded to the DEC all permit applications for which a "Notice of Issuance of Final Determination" had not yet been issued at that time, but retained some 200 cases—including the plaintiffs'—in which adjudicatory hearings had been requested

and granted. As of November 30, 1977, the EPA had fully resolved 86 of those cases.

As noted above, the first formal action in plaintiffs' adjudicatory hearings was a pre-hearing conference in February, 1977. At that conference, plaintiffs first raised the issue that is the basis of their complaint in this suit.[7] The plaintiffs argued that the EPA had no jurisdiction over the permits for the power plants, and thus no jurisdiction to hold adjudicatory hearings, because 33 U.S.C. § 1342(c)(1)[8] mandated that the EPA suspend the issuance of permits in New York following the approval of New York's permit program. As required by 40 C.F.R. § 125.36(m), this issue, among others, was immediately referred to the EPA General Counsel for resolution. On July 29, 1977, the General Counsel ruled that the EPA did have jurisdiction over these permits and jurisdiction to conduct the adjudicatory hearing. According to 40 C.F.R. § 125.36(m)(4), this decision by the General Counsel is binding upon the hearing judge and upon the Regional Administrator when he reviews the record of the hearing. Administrative review of the General Counsel's decision can only be obtained by appealing the Regional Administrator's eventual decision on the permits to the Administrator of the EPA. See 40 C.F.R. § 125.-36(n)(1).

Following the General Counsel's decision, the proceedings were returned to the hearing judge, who established a schedule for the receipt of testimony. According to that schedule, the hearing has already commenced and may very well continue into the summer of this year, if not later. On October 5, 1977, plaintiffs filed the complaint in this suit.

*The Jurisdiction of This Court*

Plaintiffs assert that jurisdiction over this action lies with this court under 28 U.S.C. §§ 1331 (general federal question), 1337 (cases arising under the commerce clause) and 1361 (mandamus). However, 33

7. Also at that conference, the four separate hearings on plaintiffs' permits were consolidated into one proceeding.

8. *See* note 2, *supra.*

U.S.C. § 1369(b)(1) provides that jurisdiction over cases which seek review of six specific types of action by the EPA lies with the court of appeals.[9] That "jurisdiction is, absent extraordinary conditions, exclusive." *Sun Enterprises, Ltd. v. Train*, 532 F.2d 280, 287 (2d Cir. 1976).[10] Plaintiffs do not contest that circuit court jurisdiction under § 1369 is, by and large, exclusive, nor do they urge that there are "extraordinary circumstances" here; rather, they argue that this action does not fall within the ambit of § 1369(b)(1), so that jurisdiction may be properly asserted under other statutes.

The gist of plaintiffs' claim is that the EPA lacks jurisdiction to promulgate permits for their facilities in New York, and thus lacks jurisdiction to hold proceedings with regard to the permits in question.[11] Defendants contend that such an action is one which seeks "[r]eview of the Administrator's action . . . (F) in issuing or denying any permit under section 1342 . . . ." § 1369(b)(1)(F). If plaintiffs' claim were raised in an action brought after the EPA's administrative process with regard to the permits had run its full course and after the EPA had issued a final permit for these facilities, there is no doubt that jurisdiction to consider that claim would rest only in the court of appeals.[12] Plaintiffs concede as much. Brief for Plaintiffs

at 22; Reply Brief for Plaintiffs at 13–14. Plaintiffs argue, however, that the result is different where, as here, the same claim is raised at some intermediate stage of the administrative process. They assert that the court of appeals cannot hear this case "because the *Administrator* has not yet taken any action 'in issuing or denying' plaintiffs' permits." Reply Brief for Plaintiffs at 12–13 (emphasis in original).

This is a striking position for plaintiffs to take in light of their vigorous assertion, made in another context, that "the related doctrines of ripeness, finality, and exhaustion of administrative remedies," *Save the Bay, Inc. v. Administrator of E.P.A.*, 556 F.2d 1282, 1290 n. 9 (5th Cir. 1977), do not bar *this* court from intervening in an ongoing administrative process and ruling on the jurisdiction of the agency. Whether plaintiffs are correct that the requisites for judicial action under these doctrines are satisfied, it would seem that they must address their argument to the court of appeals. If the language in § 1369 granting the appellate court power to review the "Administrator's" action simply indicates that the usual principles of ripeness, finality and exhaustion, with all their fillips and exceptions, are as applicable in § 1369 actions as they are elsewhere, this conclusion is unavoidable.[13]

**9.** The other jurisdictional provision of the 1972 Act is 33 U.S.C. § 1365(a). That section provides that the district court has jurisdiction over suits against the Administrator of the EPA which allege "a failure of the Administrator to perform any act or duty . . . which is not discretionary with the Administrator." Plaintiffs do not attempt to predicate jurisdiction on this section, and I do not consider it further.

**10.** If the administrative action that is challenged falls within one of the six categories of § 1369(b)(1), no court other than the court of appeals may hear the suit in the first instance. *See Sun Enterprises, supra.* On the other hand, the court of appeals does not have jurisdiction if the challenged action is not of a kind specifically listed in § 1369(b)(1), even though the subject matter may be related to one of the listed actions. *See, e. g., Bethlehem Steel v. Environmental Protection Agency*, 538 F.2d 513 (2d Cir. 1976).

**11.** The relief requested by the complaint is that this court declare that jurisdiction over these permits lies with the DEC and not the EPA, and order the EPA to transfer the pending proceedings on plaintiffs' permits to the DEC and cease its own proceedings with regard to these permits.

**12.** That is to say, judicial review of an administrative "action" encompasses review of the actor's jurisdiction to take the action as well as review of the correctness of the substance of the action. An attack upon the EPA's jurisdiction to take one of the actions enumerated in § 1369(b)(1) can therefore only be made in the court of appeals. *See American Petroleum Institute v. Train*, 526 F.2d 1343 (10th Cir. 1975).

**13.** If the proposed impediment to court of appeals review of this claim at this time is a lack of ripeness, finality, or exhaustion of administrative remedies, and if plaintiffs are correct that this impediment is illusory, then the court

Plaintiffs' argument, however, may be that this language indicates far more— namely, that the court of appeals cannot have *jurisdiction* unless the Administrator himself has made his decision in the proceedings under review, whether or not the case is otherwise ripe, the agency action final or the administrative remedies exhausted within the meaning of those doctrines so that the case may be heard in a federal court. Given plaintiffs' argument that the EPA determination which they ask this court to set aside is already "final" for purposes of judicial review, it is apparent that plaintiffs' literal reading of the words "Administrator's action" amounts to a contention that the court of appeals' power to hear cases under § 1369 is narrower in significant regards than would be the case if normal principles of administrative law were applied.

Plaintiffs' contention must be rejected. Such a reading would permit a district court, under certain circumstances, to hear a case whose subject matter is clearly committed to the jurisdiction of the court of appeals, thus bifurcating review of the same issue between the two courts. Such bifurcation would conflict "with the congressional purpose of using direct review in the courts of appeals to insure expeditious and consistent application" [14] of the law with regard to discharge permits, and would seriously undermine the exclusivity of the circuit court's jurisdiction over these matters. Moreover, plaintiffs' reading would mean that which of the two courts had jurisdiction over a claim would depend solely upon the seemingly irrelevant consideration of how far the administrative processes on a particular permit had progressed. Plaintiffs have presented no evidence which indicates that Congress intended to allocate jurisdiction over precisely the same claim between the appellate and district courts, depending on the point in the administrative process at which a party seeks to obtain judicial review. In short, it

would be more in keeping with the purpose of original review in the court of appeals to honor the exclusivity of that court over the matters committed to it, and to leave to that court the determination of whether an interlocutory appeal from an agency determination is appropriate in any given case.

Plaintiffs rely on *Leedom v. Kyne*, 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210 (1958) and *PepsiCo, Inc. v. F.T.C.*, 472 F.2d 179 (2d Cir. 1972), *cert. denied*, 414 U.S. 876, 94 S.Ct. 44, 38 L.Ed.2d 122 (1973). Because, however, these cases concern jurisdictional provisions that differ in structure or language from 33 U.S.C. § 1369(b)(1), they are not controlling here.

In *Leedom v. Kyne, supra*, plaintiff brought suit in district court to challenge an order of the National Labor Relations Board which included certain employees in a particular bargaining unit, in direct violation of a mandate of the National Labor Relations Act. Pursuant to that order, an election was held for the unit, and the winning union was certified by the Board as collective bargaining agent. The National Labor Relations Act provides that review of a Board order which commands the cessation of an unfair labor practice may be had in the court of appeals. 29 U.S.C. § 160(e) and (f). The Act also provides for circuit court review of any action involved in certifying a collective bargaining agent, *if* the certification is drawn into question by an unfair labor practice proceeding pursuant to 29 U.S.C. § 160(e) or (f). *American Federation of Labor v. National Labor Relations Board*, 308 U.S. 401, 409–11, 60 S.Ct. 300, 84 L.Ed. 347 (1940). But the Act does *not* provide for court of appeals review of the certification proceedings in any other context. *American Federation of Labor, supra.*

Against this background, the Court in *Leedom* held that the district court had jurisdiction over an immediate challenge to

---

of appeals can hear this case and this court cannot. Conversely, if the impediment is a real one, no federal court can presently hear plaintiffs' claim.

14. *American Meat Institute v. Environmental Protection Administration*, 526 F.2d 442, 452 (7th Cir. 1975).

the certification proceedings which alleged that the Board's inclusion of the plaintiffs in the bargaining unit subject to the certification order was unlawful. It was clear that the court of appeals could only review the certification order in the unlikely event that at some point the union or the employer was charged with committing an unfair labor practice. The Court's decision was based on its concern that, absent the existence of district court jurisdiction, the plaintiffs would have suffered an invasion of a federally-created right without access to a court in which to seek a remedy.

In this case, there is no such danger. The court of appeals will certainly review plaintiffs' claim, either now, if there is no finality problem, or at the conclusion of the administrative process. Unlike the situation in *Leedom*, the absence of district court jurisdiction does not create the possibility that agency action adversely affecting the plaintiffs will be completely unreviewable in a federal court.

*PepsiCo, Inc. v. F.T.C., supra*, presents a situation much more analogous to the instant case. The F.T.C. had instituted administrative proceedings against PepsiCo and six other soft drink manufacturers, charging them with engaging in an unfair method of competition. Depending on the outcome of those proceedings, the F.T.C. could have ordered the manufacturers to cease and desist from engaging in the specified practice. The manufacturers moved before the Hearing Examiner to dismiss the complaint for failure to join a number of allegedly indispensable parties. The motion was denied and an interlocutory appeal was taken to the Commission, where the motion was denied again. PepsiCo then filed suit in the district court, asking that further proceedings before the F.T.C. be barred until the missing parties were joined.

Although 15 U.S.C. § 45(c) and (d) provide that the court of appeals has exclusive jurisdiction to review "an order of the Commission to cease and desist from using any method of competition or act or practice," the Second Circuit held that the district court had power to review an interlocutory order emanating from the cease and desist proceedings, so long as the requisites for judicial review specified in § 10(c) of the Administrative Procedure Act, 5 U.S.C. § 704, were met. *PepsiCo, Inc., supra,* 472 F.2d at 185. In a brief passage, the court indicated that the court of appeals did not have original jurisdiction over the action because "the order here assailed is not one requiring PepsiCo to cease and desist from anything . . . ." *Ibid.*[15]

The *PepsiCo* holding regarding court of appeals' jurisdiction was derived from the precise language of the jurisdictional grant to the circuit court contained in 15 U.S.C. § 45(c). Under that provision, the court's jurisdiction, though exclusive, extends only to review of cease and desist "orders." Absent such an order, the court of appeals has no jurisdiction under 15 U.S.C. § 45(c) to review F.T.C. action. Section 1369(b)(1), however, contains no such limitation; unlike § 45(c), § 1369(b)(1) does not contain a clear and unmistakable requirement that the EPA must have taken its literally final act with regard to the permits in question before the circuit court can have jurisdiction.[16] Certainly, such a requirement should not be read into the statute by implication.

Plaintiffs' argument that § 1369(b)(1) does contain such a requirement, *see* note 15, *supra*, is not persuasive. The argument depends on a literal interpretation of the word "Administrator," but it appears just as likely that the word is intended merely as a shorthand synonym for "Environmental Protection Agency," as it is so used

---

**15.** Similarly, the plaintiffs argue here, the circuit court lacks jurisdiction because the "Administrator" has taken no action yet.

**16.** Whether the court of appeals should decline to exercise its jurisdiction because of an absence of ripeness, finality or exhaustion is a question that can only be decided by that court.

*See* pp. 631–632, *supra; cf. Niagara Mohawk Power Corp. v. Federal Power Commission,* 538 F.2d 966 (2d Cir. 1976) (statutory grant of power to court of appeals to hear interlocutory appeals from F.P.C. orders limited by judicially created requirements for review).

throughout the 1972 Act. Even assuming the word was used in a literal fashion, it must have been envisioned that the Administrator would delegate most of his many powers and duties to others in the agency.[17] The jurisdiction of the court of appeals under such a reading is clear, for the agency action which plaintiffs challenge is indisputably an action involved in the issuance or denial of a permit. And to the extent that the phrase "Administrator's action . . . in issuing or denying a permit . . ." intimates a requirement of ripeness, finality or exhaustion of administrative remedies, the phrase imposes no greater limitation upon the power of the appellate court than that which exists whenever any federal court, including this one, is called upon to review administrative action. In short, I do not find that the language of § 1369 compels a construction that unnecessarily bifurcates judicial review and would undermine the efficacy of original and exclusive court of appeals jurisdiction in this matter.

Because the court of appeals has jurisdiction over this case by virtue of 33 U.S.C. § 1369(b)(1)(F), this court does not.[18] The motion to dismiss for lack of subject matter jurisdiction is granted, and plaintiffs' motion for summary judgment is denied.

IT IS SO ORDERED.

---

17. As one example out of many, 33 U.S.C. § 1342(d)(1) requires a State to "provide notice to the Administrator of . . . each permit proposed to be issued by such State." That obligation is presumably discharged if the State complies with 40 C.F.R. § 124.46, which only requires that the State transmit copies of each proposed permit to the Regional Administrator of the EPA.

18. In light of this determination, it is unnecessary to reach defendants' alternative contention that exclusive jurisdiction over this matter lies in the court of appeals by virtue of § 1369(b)(1)(D).