**FORT SMITH OUTERWEAR, INC., and
H. L. Friedlen Company,
Petitioners,**

v.

**NATIONAL LABOR RELATIONS
BOARD, Respondent.**

No. 73-1587.

United States Court of Appeals,
Eighth Circuit.

Submitted March 15, 1974.

Decided June 19, 1974.

Anthony E. Dombrow, Chicago, Ill., for petitioners.

Corinna Metcalf, Atty., N. L. R. B., Washington, D. C., for respondent.

Before GIBSON, BRIGHT and STEPHENSON, Circuit Judges.

BRIGHT, Circuit Judge.

Petitioner, Fort Smith Outerwear, Inc. (Employer), a wholly-owned subsidiary of H. L. Friedlen Company, was the focus of a union organizational campaign during late 1971 and early 1972. This campaign culminated in an election on March 1, 1972, which the Union [1] lost by a vote of 46 to 37. Thereafter, the Union filed objections to the conduct of the election and charged the Employer with unfair labor practices. After a hearing by an administrative law judge, the case was presented to a three-member panel of the National Labor Relations Board. The Board found the Employer guilty of violating § 8(a)(1) of the National Labor Relations Act, 29 U.S.C. § 158(a)(1), and, contrary to the ruling of the administrative law judge, found a § 8(a)(3), 29 U.S.C. § 158(a)(3), violation in the Employer's transfer of an employee to a different job in retaliation for her pro-union activity.[2] Finally, the Board sustained the determination of the administrative law judge that unfair labor practices made a fair

rerun election unlikely and that the Employer violated § 8(a)(5), 29 U.S.C. § 158(a)(5), by refusing to bargain with the Union which, since December 13, 1971, represented an uncoerced majority of the employees in the appropriate bargaining unit.[3] The case comes before us on the Employer's petition for review and the Board's cross-application for enforcement of the order.

I.

On review of the record, we find substantial support for the Board's findings that the Employer committed unfair labor practices during the pre-election campaign in violation of § 8(a)(1). We also find substantial evidence in the record for the Board's finding that the Employer violated § 8(a)(3) when it transferred an employee to a different job in retaliation for her union activity. We deem any further discussion of these § 8(a)(1) and § 8(a)(3) transgressions as well as the underlying evidence to be unnecessary and having no precedential value. Thus, we enforce the Board's order on these issues. See 8th Cir. R. 14. We disagree, however, with the Board majority on the § 8(a)(5) violation and hold the bargaining order unjustified in this case.

II.

We turn to a discussion of the evidence forming the basis for the issuance of the bargaining order. At the hearing before the administrative law judge, the general counsel for the Union introduced union authorization cards for more than a majority of employees in the unit. These authorization cards were entitled "APPLICATION FOR MEMBERSHIP in the Amalgamated Clothing Workers of America, AFL–CIO," and read:

I, the undersigned, hereby apply for membership in the Amalgamated

---

1. Southwest Regional Joint Board, Amalgamated Clothing Workers of America, AFL–CIO, hereinafter referred to as "Union."

2. The Board's opinion is found at 205 N.L. R.B. No. 74 (1973).

3. Board member Ralph E. Kennedy dissented on the § 8(a)(3), 29 U.S.C. § 158(a)(3), violation and dissented on the bargaining order since in his view the Union did not represent an uncoerced majority of the employees.

Clothing Workers of America, and do hereby appoint and authorize the officers thereof, to represent and negotiate for me in all matters pertaining to wages, hours and other conditions of employment.

The administrative judge summarily excluded two of the introduced cards as representing employees not within the unit and heard evidence on challenges to 38 other cards, eventually sustaining two challenges. The two cards rejected by the administrative judge were explained as follows:

1. Vivian Gibbs—misstatement of purpose of card as not "signing up to become union."

2. Violet Baker—misrepresentation that card only for election.

Since 23 cards were unchallenged and 36 (of 38) were sustained against challenge, the administrative law judge ruled that the Union represented an uncoerced majority of 59 employees out of 106 on the crucial date of December 13, 1971. The Board, however, further reduced that majority by invalidating the cards of three employees—Linda Moore, Colleen Buzzard, and Ruth Riddle.[4] Thus, these determinations left the Union in the present stance of having a slim, two-card majority on which to justify a bargaining order.

■ Where the Employer's conduct is not marked by " 'outrageous' and 'pervasive' unfair labor practices," but nonetheless tends to undermine majority strength and impede election processes, as in the instant case, the Board's authority to issue a bargaining order requires a showing:

[T]hat at one point the union had a majority; in such a case, of course, effectuating ascertainable employee free choice becomes as important a goal as deterring employer misbehaviour. [N.L.R.B. v. Gissel Packing Co., 395 U.S. 575, 613–614, 89 S.Ct. 1918, 1940, 23 L.Ed.2d 547 (1969).]

See Arbie Mineral Feed Co. v. N. L. R. B., 438 F.2d 940, 943–945 (8th Cir. 1971).

We need detail our examination of only a few of the still-contested cards to resolve this issue. Imogene Steed and Juanita Anderson signed cards on December 3, 1971, without reading them when the Union solicitor told them "if enough people signed the cards they could have an election." Hazel Turner signed a card when the solicitor said the card "was to petition for an election." Shirley Walls signed a card when she was told that if enough people signed there would be an election; in addition, she was told that if she signed and the

4. The Board's explanation for invalidating these cards consisted of the following:

The card of Linda Moore was signed on December 3, 1970. The Administrative Law Judge concluded that this card was misdated and was received by the Union during the organizational campaign that began on November 30, 1971. It is well settled that the burden of proof is on the General Counsel to establish when a card is signed. The General Counsel did not call as a witness Linda Moore or anyone who observed her sign the card. There is thus no evidence to establish that the card was actually signed on a date other than December 3, 1970, and thus during the same organizational campaign which led to the request for recognition. In these circumstances, we conclude that the General Counsel has not met his burden of proof.

As to Colleen Buzzard's card, the Administrative Law Judge concluded that, although Buzzard signed a card after she heard Beulah Threadgill say that "the only purpose was to bring about an election if she would get enough employees to sign the card," Threadgill did not solicit Buzzard to sign a card. The record shows that someone put some cards on a table where Buzzard was sitting and only Threadgill stated the cards' purpose to Buzzard. Buzzard testified that she signed the card because of what Threadgill told her. On the basis of the foregoing, we conclude that Threadgill did solicit Buzzard to sign the card on the basis of Threadgill's aforesaid misrepresentation.

In regard to Ruth Riddle's card, Riddle testified that she read and signed a card after Hester Khilling told her the card "was only to see if enough people would sign to get an election" and to see how many people wanted a union. Riddle also stated that she signed the card on the basis of Khilling's assertion that the card was "only" for an election. We find this card invalid.

Union won, she would not need to pay a union initiation fee. A similar waiver of initiation fee statement was made to Virginia Morris.

We find no real distinction in the representations which were made to and relied on by employees Steed, Anderson, Turner, and Walls when they signed their cards and the misrepresentations which were made to and relied on by employees Buzzard and Riddle,[5] when they signed their cards. Yet in the former case the administrative judge and the Board majority found the cards to be valid but in the latter case the Board found them invalid.

In exercising its decision-making powers in a single case, the Board must not act in an arbitrary or capricious manner and should maintain a consistent standard for evaluating the evidence. *Cf.* Wilkinson Manufacturing Co. v. N.L.R.B., 456 F.2d 298, 304 (8th Cir. 1972). Thus, since the Board or the administrative law judge rejected the cards of four employees as already mentioned (Gibbs, Baker, Buzzard, Riddle) because it found that these parties had not consented to join the Union, but only sought an election,[6] the Board for the same reasons should have rejected the additional cards of Steed, Anderson, Turner, and Walls. Where the solicitation of signatures for authorization cards is represented as being solely for the purpose of obtaining an election, the resultant signed cards cannot be included in the total number of cards representing employees who have agreed to be represented by the Union.

Additionally, the representations made to employees Walls and Morris that an initiation fee would be waived as to them if the Union won the election seems to violate the rule enunciated in N.L.R.B. v. Savair Mfg. Co., 414 U.S. 270, 94 S.Ct. 495, 38 L.Ed.2d 495

(1973). In *Savair*, the Court held that the promise to waive union initiation fees, conditioned upon the signing of authorization cards prior to a union election, interfered with employee rights and therefore constituted an "unfair" labor practice by the Union under §§ 7, 8, and 9 of the National Labor Relations Act, 29 U.S.C. §§ 157, 158, and 159. Thus the validity of these two cards is doubtful for that reason.[7]

The Employer has made a number of other card challenges. However, due to the fact that we have already invalidated six challenged cards—thereby reducing the number of valid cards below a majority—we need not consider these additional challenges of the Employer. Accordingly, we enforce the Board's order insofar as the §§ 8(a)(1) and 8(a)(3) violations. We reject the § 8(a)(5) bargaining order and remand this case to the Board for further proceedings.

---

5. *See* n. 4, *supra.*

6. N.L.R.B. v. Gissel Packing Co., 395 U.S. 575, 89 S.Ct. 1918, 23 L.Ed.2d 547 (1969). *See* N.L.R.B. v. Savair Mfg. Co., 414 U.S 270, 279–280, 94 S.Ct. 495, 38 L.Ed.2d 495 (1973).

7. The Board suggests a remand to determine whether a dues waiver was available to employees joining the Union after the election, and a practice not prohibited. In light of the overall record, we think the remand is unnecessary.