**GENERAL STEEL PRODUCTS, a division of the Seng Company, Petitioner,**

**v.**

**The NATIONAL LABOR RELATIONS BOARD, Respondent,**

**No. 74-1077.**

United States Court of Appeals, Fourth Circuit.

Argued June 3, 1974.

Decided Oct. 1, 1974.

Lewis P. Hamlin, Jr., Salisbury, N. C., (Kluttz & Hamlin, Salisbury, N. C., on brief), for petitioner.

Frank C. Morris, Jr., Atty., National Labor Relations Board (Peter G. Nash, Gen. Counsel, John S. Irving, Deputy Gen. Counsel, Patrick Hardin, Associate Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, and Michael S. Winer, Atty., National Labor Relations Board, on brief), for respondent.

Lawrence M. Cohen, Chicago, Ill. (Gerard C. Smetana, Lederer, Fox & Grove, Chicago, Ill., on brief), for American Retail Federation, amicus curiae.

Before BUTZNER, RUSSELL and WIDENER, Circuit Judges.

BUTZNER, Circuit Judge:

The primary question raised by this review of a bargaining order is whether the National Labor Relations Board can reinstate a petition for a representation election that the Board dismissed when it erroneously entered an earlier bargaining order. We hold that the Board did not exceed its authority, and we enforce its order.

The Upholsterers' Union has been attempting since 1964 to establish itself as the employees' bargaining representative at General Steel Products Co. The following summary of earlier proceedings provides an understanding of the present controversy:

¶ In March 1966, the Board found that the company's unfair labor practices nullified its 1964 election victory and set aside the election. It also ruled that the company had violated §§ 8(a)(1) and (5) of the Act, entered a bargaining order based on signed authorization cards, and dismissed the union's 1964 petition for an election.[1]

¶ In June 1968, this court, upon the company's petition for review, enforced the cease and desist order based on the violations of § 8(a)(1) but denied enforcement of the bargaining order.[2]

¶ In June 1969, the Supreme Court reversed our denial of enforcement of the bargaining order and remanded the case for the Board's reconsideration.[3]

¶ In December 1969, the Board, without a hearing, affirmed its issuance of a bargaining order.[4]

¶ In July 1971, this court again denied enforcement of the bargaining order and remanded the case for a hearing to determine, among other issues, whether a fair election could be held.[5]

¶ In October 1972, the Board ruled that a bargaining order was unnecessary, reinstated the union's 1964 election petition, and directed a second election.[6]

¶ In December 1973, the Board summarily rejected the company's objections to the second election, which the union won, and entered the current bargaining order.[7]

We accept the company's major premise: the Board lacks statutory authority to order a representation election without an extant petition for an elec-

1. General Steel Products, Inc., 157 NLRB No. 59 (1966).

2. General Steel Products, Inc. v. NLRB, 398 F.2d 339 (4th Cir. 1968).

3. NLRB v. Gissel Packing Co., 395 U.S. 575, 89 S.Ct. 1918, 23 L.Ed.2d 547 (1969).

4. General Steel Products, Inc., 180 NLRB No. 8 (1969).

5. General Steel Products, Inc. v. NLRB, 445 F.2d 1350 (4th Cir. 1970).

6. General Steel Products Co., 199 NLRB No. 121 (1972).

7. General Steel Products Co., 207 NLRB No. 112 (1973).

tion.[8] We are not persuaded, however, by the arguments that the company builds on this premise. They are (1) the Board lacked authority to reinstate the petition it dismissed in 1966, and (2) the Board acted arbitrarily because reinstatement is unprecedented and inconsistent with its previous positions.

■ The union's 1964 representation petition satisfied the Act's requirements and invoked the Board's power to order an election. The Board's subsequent entry of a bargaining order based on a card count, however, appeared to make the election petition superfluous and the Board dismissed it. When the bargaining order was ultimately determined to have been erroneously granted, the election petition became an appropriate instrument for determining the question of representation over which the parties had been continuously litigating.

The Board's correction of its error was not limited to vacating the bargaining order which this court had declined to sustain. It could go further and reinstate the election petition which it had improvidently dismissed on the mistaken assumption that its bargaining order was enforceable. Mr. Justice Frankfurter stated the controlling principle of law in FCC v. Pottsville Broadcasting Co., 309 U.S. 134, 145, 60 S.Ct. 437, 442, 84 L.Ed. 656 (1940):

> "On review the court may . . . correct errors of law and on remand the Commission is bound to act upon the correction . . . But an administrative determination in which is imbedded a legal question open to judicial review does not impliedly foreclose the administrative agency, after its error has been corrected, from enforcing the legislative policy committed to its charge."

Contrary to the company's assertion, the Board's reinstatement of the petition does not lack precedent. Under circumstances substantially similar to those found here, the Board reinstated a petition and ordered a second election in New Alaska Development Corp., 194 NLRB No. 137 (1972).

Nor is the Board's ruling inconsistent with the position that it took in Peerless of America, Inc. v. NLRB, 484 F.2d 1108 (7th Cir. 1973) and Ft. Smith Outerwear v. NLRB, 499 F.2d 223 (8th Cir. 1974), where, in unreported motions, it questioned the statutory authority of a reviewing court to order an election on a dismissed petition.[9] We, however, are not faced with this issue. Neither our remand in General Steel Products, Inc. v. NLRB, 445 F.2d 1350 (4th Cir. 1971), nor this opinion directs the Board to hold an election. Consequently, the Board had no occasion to assert in this case the position it took in Peerless and Ft. Smith. It is one thing for the Board to assert its own authority to reinstate a representation petition and order an election under § 9(c) of the Act, as it has done here. It is quite another proposition for the Board to question a court's exercise of similar authority, as it did in Peerless and Ft. Smith. The Board's positions are complementary, not inconsistent.

The company filed a number of objections to the second election charging that the union's misconduct affected the election. We find no error in the Board's disposition of these issues without an evidentiary hearing. Cf. NLRB v. Americana Nursing Home, 459 F.2d 26 (4th Cir. 1972); Intertype Co. v. NLRB, 401 F.2d 41 (4th Cir. 1968).

Order enforced.

---

8. The Board's authority to order an election is contained in § 9(c)(1) of the Act [29 U.S.C. § 159(c)(1) (1970)], which provides in part:

"Whenever a petition shall have been filed . . .

(A) by . . . a labor organization . . . or

(B) by an employer . . .
the Board shall investigate such petition and [if appropriate] direct an election by secret ballot . . ."

9. In support of its motions, the Board argued that AFL v. NLRB, 308 U.S. 401, 60 S.Ct. 300, 84 L.Ed. 347 (1940), precluded direct review of an election proceeding.