**GOULD, INC.**

v.

**Robert S. FUCHS et al.**

**Civ. No. H–79–724.**

United States District Court,
D. Connecticut.

March 7, 1980.

---

Edward T. Dodd, Jr., Keefe & Dodd, Waterbury, Conn., Garry M. Ewing, John G. Kruckho, Towson, Md., for plaintiff.

Ronald Lasky, Sub Region 39, N. L. R. B., Hartford, Conn., Margery E. Lieber, Deputy Asst. Gen. Counsel for Sp. Litigation, N. L. R. B., Lynne E. Deitch, NLRB, Washington, D. C., for defendants.

## MEMORANDUM OF DECISION

BLUMENFELD, Senior District Judge.

The National Labor Relations Board (the Board), acting through its Regional Di-

rector,[1] scheduled a representation election at the plaintiff's Plantsville, Connecticut plant for December 13, 1979, in order to permit the plaintiff's 375 employees to determine whether they wished to be represented by the Communications Workers of America, AFL–CIO (CWA). On December 5, 1979, eight days before the scheduled election, a CWA representative filed the following unfair labor practice charge with the Board's sub-regional office in Hartford:[2]

> "On or about the week ending November 17, 1979, Gould Inc. notified their employees that an open house and Christmas party, complete with Santa Claus and gifts for the children, would be held .at the company. The date of this planned party is Saturday, December 9, 1979, four (4) days prior to an N.L.R.B. election on December 13, 1979. The Communications Workers of America believes this to be a blatant violation of the Act on the part of the company in an attempt to discourage activity and support on behalf of the union. Employees with service ranging up to 15 years have verified to the union that this is the first time the company has ever hosted this kind of an affair. We respectfully request that the scheduled election on December 13, 1979, be postponed and an investigation of these charges be undertaken by the Board."

On the following day, the Board's Regional Office in Boston informed the plaintiff by telegram that the December 13 election was to be postponed indefinitely pending investigation of the December 5 charge.

Shortly thereafter, the plaintiff brought this action, seeking a preliminary injunction or a writ of mandamus to set aside and vacate the postponement, to require the Board to conduct an election within seven days of this court's order, and to have the Board either certify the election results or

---

1. Defendant Robert S. Fuchs is the Regional Director of the Board's Region 1.

2. Defendant Peter B. Hoffman is the Officer-in-Charge of the Board's Hartford sub-regional office.

impound the ballots pending resolution of the December 5 charge. The plaintiff-employer's attempt to circumvent the Board's "blocking charge practice" is based upon its allegation that:

> "the postponing of representation elections and issuance of telegrams such as the one [sent to the plaintiff] is a clerical function, and that the election was postponed before the Regional Director, or anyone acting on his behalf, even attempted to investigate the relevant facts or to determine if the nature of the charge was such as would warrant postponing the election."

Cplt. ¶ 9.[3] The defendants, in response, have filed a motion to dismiss for lack of subject matter jurisdiction, Fed.R.Civ.P. 12(b)(1), and for failure to state a claim upon which relief can be granted, *id.* 12(b)(6). Since the Board's motion to dismiss, if granted, would preclude consideration of the plaintiff's pending motion for a preliminary injunction, this court will decide the Rule 12 motion first.

### Subject Matter Jurisdiction in Representation Proceedings

Section 10 of the National Labor Relations Act (the Act), 29 U.S.C. § 160 (1976), carefully limits the jurisdiction of the federal courts to review Board actions, prescribing resort to the courts of appeals only to review "final order[s]" of the agency. *Id.* § 10(f), 29 U.S.C. § 160(f). The Supreme Court long ago held that Board decisions in representation cases were not "final orders" within the meaning of § 10(f) and ordinarily could be challenged only in a proceeding to enforce or review an order restraining an unfair labor practice. *AFL v. NLRB*, 308 U.S. 401, 409, 60 S.Ct. 300, 304, 84 L.Ed. 347 (1940). *Accord, Boire v. Greyhound Corp.*, 376 U.S. 473, 476–77, 84 S.Ct. 894, 896–897, 11 L.Ed.2d 849 (1964). Thus, for example, where the Board selects an inappropriate bargaining unit in which to conduct an elec-

tion, the employer cannot contest that determination before the election is held; his remedy, instead, is a refusal to bargain if the union wins, coupled with a challenge to the unit determination if the union subsequently files an unfair labor practice charge. *See id.* at 477, 84 S.Ct. at 897.

In the face of the legislative mandate that district courts should keep their distance in representation proceedings, the courts have nonetheless carved out a few narrow exceptions to the general rule. Some cases have held that the district courts possess jurisdiction to vindicate the constitutional rights of a complaining party in a representation dispute. *Fay v. Douds*, 172 F.2d 720, 723 (2d Cir. 1949); *see Milk & Ice Cream Drivers' Union, Local 98 v. McCulloch*, 113 U.S.App.D.C. 156, 158, 306 F.2d 763, 765 (D.C. Cir. 1962). Another case affirmed a district court's assertion of jurisdiction where there existed "public questions particularly high in the scale of our national interest because of their international complexion." *McCulloch v. Sociedad Nacional de Marineros de Honduras*, 372 U.S. 10, 17, 83 S.Ct. 671, 675, 9 L.Ed.2d 547 (1963). Finally, *Leedom v. Kyne*, 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210 (1958), held that the Board's determination of a bargaining unit was properly set aside by a district court because the Board had acted "in excess of its delegated powers and contrary to a specific prohibition in the Act." *Id.* at 188, 79 S.Ct. at 184. The plaintiff relies on this last exception in the instant case.

### The Kyne Exception

■ The Board could hardly have violated the express terms of the Act more flagrantly than it did in *Kyne*. Section 9(b)(1) provides that "the Board *shall not* . . . decide that any unit is appropriate for [collective bargaining] purposes if such unit includes both professional employees and

---

**3.** Defendant Hoffman has since investigated the December 5 charge in greater depth. Apparently concluding that it was well-founded, he filed a formal Complaint and Notice of Hearing on February 8, 1980, which incorporated the Christmas party charge along with numerous other allegations of unfair labor practices by the plaintiff. A hearing on these matters is presently scheduled for March 10, 1980.

employees who are not professional employees *unless* a majority of such professional employees vote for inclusion in such unit." 29 U.S.C. § 159(b)(1) (1976) (emphasis added). After refusing to take a vote among certain professional employees to determine whether a majority of them would agree, the Board in *Kyne* included both professional and nonprofessional employees in the bargaining unit that it found appropriate. Following an election, the professional employees brought suit in a district court to set aside the unit determination.

The Supreme Court rejected the Board's argument that the Act "foreclosed review of its action by an original suit in a District Court," 358 U.S. at 188, 79 S.Ct. at 183, noting that this case presented a different question than had been answered in *AFL v. NLRB, supra*—one expressly left open in the earlier case. " '[T]he question [posed by *AFL v. NLRB* was] distinct from . . . whether petitioners are precluded by the provisions of the Wagner Act from maintaining an independent suit in a district court to set aside the Board's action *because contrary to the statute . . . .' " Id.* at 187–88, 79 S.Ct. at 183 (emphasis added), *quoting AFL v. NLRB, supra,* 308 U.S. at 404, 60 S.Ct. at 301. Holding that jurisdiction was indeed available, the Court explained:

> "This suit is not one to 'review,' in the sense of that term as used in the Act, a decision of the Board made within its jurisdiction. Rather it is one to strike down an order of the Board made in excess of its delegated powers and contrary to a specific prohibition in the Act. Section 9(b)(1) is clear and mandatory. . . . Plainly, this was an attempted exercise of power that had been specifically withheld. It deprived the professional employees of a 'right' assured to them by Congress. Surely, in these circumstances, a Federal District Court has jurisdiction of an original suit to prevent deprivation of a right so given."

358 U.S. at 188–89, 79 S.Ct. at 184.

*Kyne* would require the plaintiff to demonstrate that by postponing the December 13 election without considering the particular circumstances of the case, the Board or its agents deprived the plaintiff of a statutory right by acting "in excess of its delegated powers and contrary to a specific prohibition in the Act." Because I conclude that the plaintiff cannot make the requisite showing, the defendants' motion to dismiss must be granted.

## Analysis

"Congress has entrusted the Board with a wide degree of discretion in establishing the procedure and safeguards necessary to insure the fair and free choice of bargaining representatives by employees." *NLRB v. A. J. Tower Co.,* 329 U.S. 324, 330, 67 S.Ct. 324, 328, 91 L.Ed. 322 (1946) (citations omitted). The "blocking charge practice" represents an exercise of that discretion. The plaintiff contends that the Regional Director failed to exercise any discretion in postponing the December 13 election, claiming upon information and belief that the postponement was a mere clerical act. The Regional Director or his clerical agents, however, acted pursuant to a well-established Board policy, found in § 11730.7 of the *National Labor Relations Casehandling Manual,* Part Two (Representation Proceedings), which provides:

> *11730.7 Exception 4—Charge Filed Too Late To Permit Investigation* : Where charges are filed too late to permit adequate investigation or clearance before a scheduled election, *the Regional Director may, in his discretion* :
>
> a. *postpone the election pending disposition of the charges or clearance for proceeding* ;
>
> b. hold the election as scheduled and impound the ballots until after disposition of the charges; or
>
> c. conduct the election, issue tally of ballots, and, in the absence of the filing of objections, issue certification; and then proceed to investigate the charges. (Emphasis added).

The Regional Director might permissibly exercise his discretion under § 11730.7 by instructing his clerical staff to follow alter-

native a. in *every* case "where charges are filed too late to permit adequate investigation." Contrary to the plaintiff's suggestion, the Regional Director does not act "in excess of . . . delegated powers," *Leedom v. Kyne, supra,* 358 U.S. at 188, 79 S.Ct. at 183, by failing to undertake a case-by-case analysis of whether alternative a., b., or c. should be employed in any given situation.

Little more need be said of *Kyne's* from requirement that agency action contravene "a specific prohibition in the Act." *Id.* The plaintiff's basic contention—that § 9(c)(1) mandates that the Board "*shall* direct an election by secret ballot and *shall* certify the results thereof," 29 U.S.C. § 159(c)(1) (1976) (emphasis added)—was raised for a similar purpose and rejected in *Surprenant Mfg. Co. v. Alpert,* 318 F.2d 396, 399 (1st Cir. 1963). In *Surprenant,* the union filed an unfair labor practice charge just two days before a scheduled election. "The Director, had such a charge been filed sooner would, under customary practice, have investigated and postponed the election if, but only if, he had found that the charge had prima facie merit. [But t]wo days were insufficient to make the investigation." *Id.* at 398. Rejecting the employer's contention that the Board was not conducting the election required by § 9(c)(1), the First Circuit wisely discerned that the "real contention is that it is not doing so in a proper manner." *Id.* at 399. However, " '[t]he control of the election proceeding, and the determination of the steps necessary to conduct that election fairly [are] matters which Congress entrusted to the Board alone.' . . . This delegation applies to selection of the proper time, . . . as well as to determining what

constitutes fair surrounding circumstances . . . .. Even granting that appellant has an interest in having a determination made of who represents a majority of its employees, the type of Board error committed here, if any, was one of discretion, subject to ordinary process of review, rather than action beyond a 'clear and mandatory' statutory limitation of the Board's powers as in appellant's case of *Leedom v. Kyne* . . . .. What appellant is asking is that the district court, in effect, supplant the Board's expertise. This cannot be done. . . . It would seem almost elementary that appellant's claim of hardship must fall upon our deaf ear."

*Id.* (footnote and citations omitted), *quoting NLRB v. Waterman S. S. Corp.,* 309 U.S. 206, 226, 60 S.Ct. 493, 503, 84 L.Ed. 704 (1940).

■ This court is no more inclined than the First Circuit to heed the plaintiff's cry of injury. While an employer may be entitled under § 9(c)(1)[4] to request that the Board investigate a representation claim, the determination of whether a question of representation exists, whether an election must therefore be conducted, or whether an election should be held at a particular time are matters committed to the Board's sound discretion. The employer does not have the right to have an election held at a time of its choosing, since "[t]he primary purpose of the Act is to protect *employee* rights," *Templeton v. Dixie Color Printing Co.,* 444 F.2d 1064, 1070 (5th Cir. 1971) (emphasis in original). And "[i]f the employer has in fact committed unfair labor practices and has thereby succeeded in undermining union

4. Section 9(c)(1) of the Act, 29 U.S.C. § 159(c)(1), provides in pertinent part:

"Whenever a petition shall have been filed, in accordance with such regulations as may be prescribed by the Board—

" . . .

"(B) by an employer, alleging that one or more individuals or labor organizations have presented to him a claim to be recognized as the representative defined in subsection (a) of this section;

"the Board shall investigate such petition and if it has reasonable cause to believe that a question of representation affecting commerce exists shall provide for an appropriate hearing upon due notice. Such hearing may be conducted by an officer or employee of the regional office, who shall not make any recommendations with respect thereto. If the Board finds upon the record of such hearing that such a question of representation exists, it shall direct an election by secret ballot and shall certify the results thereof."

sentiment, it would surely controvert the spirit of the Act to allow the employer to profit by his own wrongdoing." *Bishop v. NLRB*, 502 F.2d 1024, 1029 (5th Cir. 1974).

The plaintiff's reliance on *Surratt v. NLRB*, 463 F.2d 378 (5th Cir. 1972), and *Templeton v. Dixie Color Printing Co.*, *supra*, is misplaced. First, the Board had ample time in those cases to investigate the blocking charge, a situation not present here. Moreover, those cases were brought by *employees*, not by "unions or employers which have adequate avenues of review under Section 10 of the Act." *Id.* at 1069. The Act requires the plaintiff-employer here to travel those avenues before taking a judicial detour. *See Bishop v. N.L.R.B.*, *supra*, at 1030 n.9.

The defendants' motion to dismiss for lack of jurisdiction is granted, and it is

So ordered.