### NATIONAL LABOR RELATIONS BOARD, Petitioner,
v.
### TOMMY'S SPANISH FOODS, INC., Respondent.

No. 71–2101.

United States Court of Appeals, Ninth Circuit.

June 27, 1972.

---

Arthur Fox (argued), Eugene B. Granof, Atty., Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Peter G. Nash, Gen. Counsel, Washington, D. C., for appellee.

A. Patrick Nagel (argued), of Nagel, Regan & Davidson, Santa Ana, Cal., Charles M. Arak, Los Angeles, Cal., for appellant.[*]

Before CHAMBERS and CHOY, Circuit Judges, and CURTIS,[*] District Judge.

CURTIS, District Judge:

Petitioner seeks enforcement of a cease and desist order directed to respondent employer, based upon an alleged violation of § 8(a) (1) of the National Labor Relations Act [29 U.S.C. § 158(a) (1)]. This court has jurisdiction under § 10(e) of the Act [29 U.S.C. § 160(e)].

Petitioner asserts, and the trial examiner found, that pending a representation election held at the request of the union, Katherine Manville, the president of respondent company made threats of loss of employment which were designed to create and instill in the employees' minds a fear of economic suffering which they would experience if they were to select the union. With one member dissenting, the Board concluded that the respondent was in violation of § 8(a) (1) of the Act and issued a cease and desist order. The sole issue before this court is whether there is substantial evidence to support the Board's conclusion.

Manville's affidavit states, among other things:

"I emphasized that the Union would undoubtedly ask for a union shop if it won the election, which would compel every employee to become a member and continue paying dues in order to work at Tommy's Spanish Foods, Inc. I strongly emphasized that I was opposed to a union shop and that belonging or not belonging to the Union should be a free choice at all times. *I told the employees that I could not, as a matter of principle, agree to any union shop condition and that to my knowledge this Union invariably insists on the union shop.*" [Emphasis supplied.]

In the same affidavit Manville admitted that about two days before the elec-

* Honorable Jesse W. Curtis, United States District Judge, Central District of California, sitting by designation.

tion, she held meetings in her office with groups of about four or five employees at a time. She told them, among other things, that respondent would never agree to any union demand to which "we were opposed as a matter of principle." The record further reveals that in a letter delivered to all employees, Manville stated that respondent would "flatly reject" any demands of a union which respondent did not believe were in the best interests of respondent and its employees.

On another occasion, the respondent delivered letters to each of its employees stating, among other things:

> "So there will be absolutely no misunderstanding, we are strongly opposed to the union organization of our employees . . . . If you vote this union in you know that the only alternative available to the Union, if we refuse to meet its demands, is to pull you out on strike. If that happens, we won't close our doors even for one day and will run it with those of you who want to stay and we will permanently replace those who go on strike. The law permits us to do that and we will . . . ."

Section 8(c) of the Act [29 U.S.C. § 158(c) guaranteeing the employer free speech rights] permits employers to express to employees "any views, argument or opinion" concerning union representation without violating § 8(a) (1) if the expression "contains no threat of reprisal or force or promise of benefit." This court recently held in N.L.R.B. v. Raytheon Co., 445 F.2d 272 (9th Cir. 1971) that

> "[I]f there is any implication [in an employer's statement that the] employer may or may not take action solely on his own initiative for reasons unrelated to economic necessities and known only to him, the statement is no longer a reasonable prediction based on available facts but a threat of retaliation based on misrepresentation and coercion . . . ." quoting N.L.R.B. v. Gissel Packing Co., 395

U.S. 575, 618, 89 S.Ct. 1918, 23 L.Ed. 2d 547 (1969).

The respondent relies upon an earlier case, N.L.R.B. v. TRW-Semiconductors, Inc., 385 F.2d 753 (9th Cir. 1967), which enunciates a rule not dissimilar from *Raytheon* and *Gissel*. We held there that the employer's statements, although critical of the union and although predicting violent consequences if the union were successful in getting a union shop, fell squarely within the protection of § 8(c), for they were, in fact, predictions of events over which the employer had no control, as distinguished from threats of reprisals which the employer could control. The threat is not privileged, but the prediction is. Southwire Company v. N.L.R.B., 383 F.2d 235 (5th Cir. 1967).

■ Although much of the statement made by President Manville was protected speech, taken as a whole we think her remarks constituted an anticipatory refusal to bargain on the issue of union shop and that they amounted to a threat that in the event of a strike, which would surely follow, striking employees would be permanently replaced. We hold, therefore, that there is substantial evidence to support the Board's conclusion upon this ground and that the order, in so far as it orders the cessation of this type of violation, should be enforced.

The petitioner seeks the enforcement of the cease and desist order upon the further ground that the respondent has unlawfully promised benefits and unlawfully given benefits in an effort to influence its employees in the exercise of their rights under § 7 of the Act.

The Board found that during the pendency of the election the respondent advised its employees that it had been considering and revising its employee insurance program and the Board concluded that the reference to the proposed insurance benefits was unlawfully designed to influence the employees in the election by promising them future benefits. After the election was lost, the respon-

dent chose to put into effect substantial increases in insurance benefits for all its employees, notwithstanding the fact that the union had objected to the election and the objections had not yet been ruled upon.

While a majority of the Board held that the promise of the insurance benefits pending the election and subsequent granting of them while the validity of the election was still in doubt was a Section 8(a) (1) violation, the chairman of the Board dissented and in stating his position said:

"Finally, I would find that Respondent's actions with respect to the insurance increase mentioned to employees . . . and granted to them . . . [subsequently] were entirely proper. The evidence is undisputed that, about a month before the petition for an election was filed, Respondent's president had begun to explore the possibility of expanding the employees' insurance coverage and had contacted two insurance brokers for this purpose. After the petition was filed, she discussed with her employees their present level of benefits and, in doing so, told them that she had been preparing, prior to the advent of the Union, to improve their insurance program. It seems clear to me that Respondent had a perfect right to inform employees of this fact. Just as an employer is free to rehearse for employees the benefits which they have previously received from the employer without a union, in order that they may evaluate the employer's past performance, so should an employer be permitted to notify employees of efforts in progress to improve the lot of the employees. Since it is uncontradicted that the Respondent's initial effort in the matter of increasing insurance predated the Union's appearance on the scene and, accordingly, cannot be characterized

as simply a stratagem in response to the threat of unionism, I would find that Respondent's announcement of the contemplated insurance increase was permitted under Section 8(c). The facts presented in this case do not give rise to the inference of unlawful intent drawn by the Court in N.L.R.B. v. Exchange Parts Co., *supra*. [375 U.S. 405, 84 S.Ct. 457, 11 L.Ed.2d 435 (1964)].

"Similarly, I disagree with the conclusion of the majority that the implementation of the insurance increase in October constituted a further violation of Section 8(a) (1). From all that appears, and as discussed above, the Respondent investigated the possibility of instituting expansion of its employee insurance program at a time when union considerations could not have played a part in that decision, and then, 2 months after the Union lost the election, and seemingly in the normal course of events, put into effect the new program which it had selected. The conception of the program having been legitimate, the Respondent was entitled at the end of the gestation period, to effect a normal delivery. The General Counsel has submitted no evidence to demonstrate that a Caesarean section was performed in order to influence a possible second election, as the Trial Examiner speculated, and I would find that Respondent acted within its rights in implementing the program."

■ We agree with this analysis of the evidence, and since we do not find substantial evidence in the record to support the analysis advanced by a majority of the Board, we deny enforcement of that portion of the order relating to the promising and granting of insurance benefits.

Enforcement of the cease and desist order granted in part and denied in part.