703 F.2d 410
 112 L.R.R.M. (BNA) 3376, 97 Lab.Cas. P 10,002
 RALEY'S, INC., Petitioner,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent,
Retail Clerks Union Locals 373, 588 and 1179, United Food &
Commercial Workers, AFL-CIO and Independent Drug
Clerks Association, Intervenors.
 Nos. 81-7471 and 81-7592.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted May 10, 1982.
Decided April 7, 1983.
 
 Henry R. Telfeian, McLaughlin & Irvin, Norman Leonard, San Francisco, Cal., for petitioner.
 David R. Marshall, N.L.R.B., Washington, D.C., for respondent.
 Petition for review of a Decision and Order of the National Labor Relations Board.
 Before KENNEDY, ALARCON, NELSON, Circuit Judges.
 NELSON, Circuit Judge:
 
 
 1
 Petitioner, Raley's Inc. (Raley's), seeks review of a Decision and Order of the National Labor Relations Board (Board) issued June 29, 1981 under National Labor Relations Act Sec. 10(f), 29 U.S.C. Sec. 160(f) (1976).[1] The Board found that Raley's had engaged in several unfair labor practices under sections 8(a)(1) and (2) of the National Labor Relations Act (Act), 29 U.S.C. Sec. 158(a)(1), (2) (1976). These findings were based on Raley's conduct in the period preceding a 1979 representation election between the incumbent Independent Drug Clerks Association (IDCA) and the Retail Clerks Union (Retail Clerks). The Board ordered Raley's to cease and desist from the unfair labor practices and to post notices to that effect. The election was set aside, and an order directing a second election was issued.
 
 
 2
 We affirm all the unfair labor practice findings except the conclusion that Raley's violated section 8(a)(1) and (2) of the Act by announcing the existence of lawfully granted benefits in order to influence the election. We reverse this finding on the basis of the employer's free speech rights guaranteed by Sec. 8(c) of the Act, 29 U.S.C. Sec. 158(c) (1976), reverse the order of the associated remedial measures, and remand the election order to the Board for reconsideration.
 
 FACTS AND PROCEDURAL BACKGROUND
 
 3
 After considering the record as a whole, we accept the Administrative Law Judge's findings of fact (adopted by the Board) as being supported by substantial evidence. 29 U.S.C. Sec. 160(e) (1976); Universal Camera Corp. v. NLRB, 340 U.S. 474, 485, 71 S.Ct. 456, 463, 95 L.Ed. 456, 466 (1951). Because the Board and the Administrative Law Judge have provided an extensive discussion of the complex facts in this case, and because we summarily affirm most of the Board's conclusions, we repeat only the basic facts and those relevant to the issues that are discussed in detail in this opinion.
 
 
 4
 Raley's is engaged in the retail sale of food, drugs, and related products throughout Northern California. Since 1964, all its drugstore and Drug Center employees have been represented by the IDCA, which was certified in an election conducted by the Board. During its tenure, the IDCA has negotiated successive collective bargaining agreements, the most recent of which was in effect at all times relevant to this case.
 
 
 5
 In April, 1979, various Retail Clerk locals began a campaign to organize Raley's Drug Center and drugstore employees and to oust the incumbent IDCA. Raley's has officially maintained a neutral posture between the two unions.
 
 
 6
 In June or July of 1979, Kay Sordillo, Secretary-Treasurer of the IDCA, called James Teel, Vice-President of Raley's, and requested that Raley's send an insurance representative to the stores to explain increased health and welfare benefits to the employees. Sordillo had received a number of questions from employees regarding their benefits, and it appeared that many of them were unaware of the precise nature and extent of those benefits. Teel contacted company counsel and then advised Sordillo that Raley's could explain its benefits but could not campaign on either union's behalf.
 
 
 7
 In late April, 1979, Raley's granted increased health and welfare benefits to its California employees who were represented by the IDCA. Raley's Nevada employees, who were represented by the Retail Clerks, had been granted additional benefits in early April. The California employees received their benefits pursuant to a 1977 agreement between the IDCA and Raley's that guaranteed IDCA-represented employees any benefits granted to the Nevada workers.
 
 
 8
 In late July and early August, before the August 16 election, meetings were held at most of Raley's retail stores in order to explain the health and welfare benefits to the employees. Sordillo and Robert Gilbert, the insurance carrier's representative, were present at each of these meetings.
 
 
 9
 The IDCA secured 106 of the 193 votes cast in the election, enough to maintain its representation. The Retail Clerks filed three cases with the NLRB charging that Raley's had committed unfair labor practices in connection with the election. After hearing a great deal of conflicting testimony, the Administrative Law Judge issued a Decision and Order that was adopted by the Board on June 29, 1981.
 
 
 10
 The Board reached the following conclusions regarding the unfair labor practice charges:
 
 
 11
 1) By unlawfully interrogating employees about their union membership sympathies and activities, Respondent Raley's has violated Section 8(a)(1) of the Act. [29 U.S.C. Sec. 158(a)(1) (1976).]
 
 
 12
 2) By threatening employees with discharge or discipline if they spoke to representatives of the Retail Clerks on company time while allowing representatives of the IDCA to freely campaign among the employees in all areas of the stores, Respondent Raley's has violated Section 8(a)(1) and (2) of the Act. [29 U.S.C. Sec. 158(a)(1), (2) (1976).]
 
 
 13
 3) By unlawfully announcing the granting of increased health and welfare benefits in order to induce the employees to select the incumbent IDCA as their bargaining representative and to discourage employee support for the Retail Clerks, Respondent Raley's violated Section 8(a)(1) and (2) of the Act. [29 U.S.C. Sec. 158(a)(1), (2) (1976).]
 
 
 14
 4) By removing campaign literature of the Retail Clerks from the employees' bulletin board while allowing literature from the incumbent IDCA to remain posted, the Respondent has violated Section 8(a)(1) and (2) of the Act. [29 U.S.C. Sec. 158(a)(1), (2) (1976).]
 
 
 15
 Raley's was ordered to cease and desist from those practices and to take certain affirmative actions designed to effectuate the policies of the Act. The Board also directed that the August, 1979 representation election between the Retail Clerks Union and the IDCA be set aside and a new one be conducted.
 
 ISSUES
 This case presents three issues on appeal:
 
 16
 I. Was there substantial evidence to support the Board's unfair labor practice findings?
 
 
 17
 II. May an employer violate Section 8(a)(1) of the Act by announcing and explaining lawfully granted benefits in order to influence an election?
 
 
 18
 III. What is the proper disposition of the election order?
 
 DISCUSSION
 
 19
 This section will consider the unfair labor practice issues, and will then address the question of the election order.
 
 I. The Unfair Labor Practice Findings
 
 20
 The substantial evidence standard governs our review of the Board's finding of an unfair labor practice. We must affirm the Board's conclusions as to whether various unfair labor practices were committed if such a conclusion is supported by substantial evidence on the record considered as a whole. NLRB v. Max Factor & Co., 640 F.2d 197, 204 (9th Cir.1980), cert. denied, 451 U.S. 983, 101 S.Ct. 2314, 68 L.Ed.2d 840 (1981); NLRB v. Prineville Stud Co., 578 F.2d 1292, 1296 (9th Cir.1978); see NLRB v. Mercy Peninsula Ambulance Service, Inc., 589 F.2d 1014, 1019 n. 8 (9th Cir.1979).
 
 
 21
 We summarily affirm all the Board's unfair labor practice findings except the one that Raley's violated section 8(a)(1) by announcing new health and welfare benefits in order to influence the outcome of the election. Although we accept for purposes of this analysis the Board's conclusion that Raley's timed the employee meetings regarding increased benefits so as to influence the voting, we reverse the finding of a violation of the Act because the announcement and explanation of lawfully granted benefits is a protected activity under section 8(c) of the Act.[2]
 
 
 22
 Section 8(a)(1) of the Act makes it an unfair labor practice "to interfere with, restrain or coerce employees in the exercise of the rights guaranteed in section 7," which entitles employees to choose their own representatives. 29 U.S.C. Secs. 157, 158(a)(1) (1976). Section 8(c) affirms an employer's right to express "any views, argument, or opinion" without violating section 8(a)(1) as long as such expression contains "no threat of reprisal or force or promise of benefit." 29 U.S.C. Sec. 158(a)(1), (c) (1976); see NLRB v. Four Winds Industries, 530 F.2d 75 (9th Cir.1976); NLRB v. Raytheon Co., 445 F.2d 272 (9th Cir.1971). In NLRB v. Gissel Packing Co., 395 U.S. 575, 89 S.Ct. 1918, 23 L.Ed.2d 547 (1969), the Supreme Court established that "an employer is free to communicate to his employees any of his general views about unionism or any of his specific views about a particular union, so long as the communications do not contain a 'threat of reprisal or force or promise of benefit.' " 395 U.S. at 618, 89 S.Ct. at 1942, 23 L.Ed.2d at 580 (quoting 29 U.S.C. Sec. 160(c)). An employer's free speech rights apply in an election between two unions as in an organizational election. See AFL v. NLRB, 308 U.S. 401, 411 n. 4, 60 S.Ct. 300, 305 n. 4, 84 L.Ed. 347, 353 n. 4 (1940). This court has stated that "unfair labor practices predicated on speech must be scrutinized carefully and unless the speech is coercive--i.e. contains threats or promises--it is privileged." NLRB v. Marine World USA, 611 F.2d 1274, 1277 (9th Cir.1980). An employer may attempt to influence the outcome of an election by presenting facts and even making predictions based on fact, as long as the employer avoids using its influence to interfere with employee rights of free association. Gissel Packing Co., 395 U.S. at 618, 89 S.Ct. at 1942, 23 L.Ed.2d at 580-81.
 
 
 23
 An employer's preelection expression will always be closely scrutinized, because an employee's economic dependence on his employer increases the possibility of coercion or undue influence from otherwise innocuous statements. 395 U.S. at 618, 89 S.Ct. at 1942, 23 L.Ed.2d at 580-81. An employer may not grant benefits in the period preceding a union election in order to influence the outcome of that election. NLRB v. Exchange Parts Co., 375 U.S. 405, 409, 84 S.Ct. 457, 460, 11 L.Ed.2d 435, 438-39 (1964). The question for the Board is whether the benefits were granted at that time "in the normal course of business ..., or outside the normal course of business in an attempt to influence the outcome of the election." Pedro's, Inc. v. NLRB, 652 F.2d 1005, 1008 (D.C. Cir.1981). See Free-Flow Packaging Corp. v. NLRB, 566 F.2d 1124, 1129 (9th Cir.1978) (test is whether grant or denial of benefits conforms to "status quo"). The Board has recognized that Raley's did not grant increased benefits in order to influence an impending election. The insurance benefits were increased automatically as a consequence of an agreement made two years before to match the benefits given to the Nevada employees. The Board therefore found that Raley's did not violate section 8(a)(1) by granting the increased benefits.
 
 
 24
 The unfair labor practice finding in question was limited to Raley's communicative activities. We are thus presented with the bald question whether an employer can violate section 8(a)(1) by announcing and explaining lawfully granted benefits in order to influence an election. The Board argues that many cases have condemned the announcement of benefits in order to influence an election. But in the cases the Board relies on, "announcement" invariably refers to cases where the grant and the announcement occurred together in the pre-election period. For example, in NLRB v. Styletek, Division of Pandel-Bradford, Inc., 520 F.2d 275 (1st Cir.1975), the court enforced an order based on violations of section 8(a)(1) in the announcement of wage increases two weeks before a union election. The court stated that "the Board is under no duty to permit [wage increases and associated benefits] to be husbanded until right before an election and sprung on the employees in a manner calculated to influence the employees' choice." Id. at 280. But there the benefits were granted and announced in a single stroke: the notice of wage benefits stated that the new wages would be reflected in the next pay checks. The Board had no reason in the Styletek case to analyze the announcement and the conferral of benefits separately.
 
 
 25
 Similarly, J.P. Stevens & Co. v. NLRB, 461 F.2d 490 (4th Cir.1972), enforced a Board order based on a finding that the employer violated section 8(a)(1) "by announcing ... the establishment of an additional paid holiday two days before a scheduled Board election ...." Id. at 491. But the announcement in that case was obviously closely connected with the illegal decision to grant the benefit: the NLRB had upheld the announcement of a wage increase on the same occasion, where the wage increase was part of an industry-wide wage movement. Id. at 492; see NLRB v. Carilli, 648 F.2d 1206 (9th Cir.1981) (implementation of new medical and dental insurance program during decertification procedures); NLRB v. Miller Redwood Co., 407 F.2d 1366 (9th Cir.1969) (promises and grants of economic benefits during union organizational campaign).
 
 
 26
 This court has previously overturned an unfair labor practice finding based on the mere communication of increased benefits. NLRB v. Tommy's Spanish Foods, Inc., 463 F.2d 116 (9th Cir.1972) addressed a Board order that rested in part on a finding that the employer had unlawfully announced before an election that it was considering improving insurance benefits. The decision denied enforcement to that part of the order, quoting a Board member's dissenting opinion:
 
 
 27
 Just as an employer is free to rehearse for employees the benefits which they have previously received from the employer without a union, in order that they may evaluate the employer's past performance, so should an employer be permitted to notify employees of efforts in progress to improve the lot of the employees. Since it is uncontradicted that the Respondent's initial effort in the matter of increasing insurance predated the Union's appearance on the scene and, accordingly, cannot be characterized as simply a stratagem in response to the threat of unionism, I would find that Respondent's announcement of the contemplated insurance increase was permitted under Section 8(c).
 
 
 28
 Id. at 119.
 
 
 29
 Tommy's properly applied the rule that an employer's speech is protected under section 8(c) unless it contains threats or promises. The present case even more clearly falls under the protection of section 8(c), because Raley's announced benefits that were in place at the time. Such an announcement could not be a promise or a threat, because it refers only to benefits granted in the past. We therefore follow Tommy's Spanish Foods in holding that an employer's true statement about lawfully granted benefits is protected under section 8(c) and the rule in Gissel Packing Co.
 
 II. The Election Order
 
 30
 This court has jurisdiction to review an election order when, as in this case, that order is based entirely on unfair labor practice findings that are also on review. Anja Engineering Corp. v. NLRB, 685 F.2d 292, 297 (9th Cir.1982). The Board here based its decision to order an election on all four of the unfair labor practice findings. Because we reverse one of those findings, we must remand the election order to the Board for reconsideration in light of the remaining unfair labor practice findings.[3]
 
 CONCLUSION
 
 31
 Section 8(c) protects the company's announcement of the increased health and welfare benefits. Therefore, the Board incorrectly found that this announcement violated section 8(a)(1) and (2) of the Act. We accordingly reject the unfair labor practice finding based on the Board's third charge, and accept the unfair labor practice findings on the first, second, and fourth charges. We enforce the order only insofar as it relates to the latter findings, and remand the election order to the Board for reconsideration.
 
 
 32
 ENFORCEMENT GRANTED IN PART AND DENIED IN PART; ORDER REMANDED IN PART.
 
 KENNEDY, Circuit Judge, concurring:
 
 33
 I concur in the court's analysis and well-reasoned opinion on the substantive issues presented, and write separately only with respect to our remand order and our discussion of Anja Engineering Corp. v. NLRB, 685 F.2d 292, 297 (9th Cir.1982). We do not here confront the issue raised by Anja. The Board has other bases for ordering an election than the unfair labor practice finding here reversed. Accordingly, we should enter our order setting aside the Board's unfair labor practice finding on its third charge and affirm its finding on the first, second, and fourth charges. The Board in its discretion would then be free to reconsider whether a new election should be held, a remedy that in any event has been in abeyance pending our decision.
 
 
 
 [1]
 The Board's Decision, Order, and Direction of Second Election is reported at 256 N.L.R.B. 946 (1981)
 
 
 [2]
 We note that, although the Board chose the word "announcement" to describe the company's activity, the evidence indicates that the employee meetings in question were not the first time the fact of an increase in benefits was revealed to any employees
 
 
 [3]
 We would not take jurisdiction over the election order but for the decision in Anja. The Supreme Court has firmly established that an order directing an election in a representation proceeding is not a final order under Sec. 10(f) of the Act, 29 U.S.C. Sec. 160(f), and hence is not directly reviewable in the Court of Appeals. Boire v. Greyhound Corp., 376 U.S. 473, 478-79, 84 S.Ct. 894, 897-98, 11 L.Ed.2d 849, 853-54 (1964); AFL v. NLRB, 308 U.S. 401, 409-12, 60 S.Ct. 300, 304-06, 84 L.Ed. 347, 352-54 (1940); NLRB v. Falk Corp., 308 U.S. 453, 458-59, 60 S.Ct. 307, 310-11, 84 L.Ed. 396, 398-99 (1940); Associated Gen. Contractors, Inc. v. NLRB, 564 F.2d 271, 274-79 (9th Cir.1977); accord, Charlie Rossie Ford, Inc. v. Price, 564 F.2d 372, 373 (9th Cir.1977). The statute provides for an indirect method of review of election orders: an employer who opposes the election order can refuse to bargain with the union that wins the election, and the election order is then reviewable under section 9(d) of the Act in a proceeding on the unfair labor practice charge of refusal to bargain. 29 U.S.C. Sec. 159(d) (1976); see Boire v. Greyhound Corp., 376 U.S. 473, 476-77, 84 S.Ct. 894, 896, 11 L.Ed.2d 849, 852-53 (1964). Anja's exception to the rule of nonreviewability conflicts with decisions in five other Circuits and is contrary to dictum in this Circuit. Graham Architectural Prods. Corp. v. NLRB, 697 F.2d 534, 543 (3d Cir.1983); Custom Recovery, Div. of Keystone Resources Inc. v. NLRB, 597 F.2d 1041, 1046 (5th Cir.1979); NLRB v. Intertherm, Inc., 596 F.2d 267, 278 (8th Cir.1979); NLRB v. Monroe Tube Co., 545 F.2d 1320, 1329 (2d Cir.1976); Hertzka & Knowles v. NLRB, 503 F.2d 625, 627 n. 4 (9th Cir.1974) (dictum); American Bread Co. v. NLRB, 411 F.2d 147, 156 (6th Cir.1969); NLRB v. Lifetime Door Co., 390 F.2d 272, 274 n. 3 (4th Cir.1968); Firestone Synthetic Fibers Co. v. NLRB, 374 F.2d 211, 213 n. 3 (4th Cir.1967); Holly Hill Lumber Co. v. NLRB, 380 F.2d 838, 840 (4th Cir.1967); Daniel Constr. Co. v. NLRB, 341 F.2d 805, 808-10 (4th Cir.1965); NLRB v. William J. Burns Int'l. Detective Agency, Inc., 346 F.2d 897, 899 (8th Cir.1965); Hendrix Mfg. Co. v. NLRB, 321 F.2d 100, 106 (5th Cir.1963); Bonwit Teller, Inc. v. NLRB, 197 F.2d 640, 642 n. 1 (2d Cir.1952) (cases finding election orders unreviewable along with underlying unfair labor practice findings). We believe that Anja is inconsistent with the statute and cannot be reconciled with prior case law on the subject