725 F.2d 1204
 115 L.R.R.M. (BNA) 2933, 100 Lab.Cas. P 10,789
 RALEY'S, INC., Petitioner,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent,
and
Retail Clerks Union Locals 373, 583, and 1179, United Food &
Commercial Workers, AFL-CIO and Independent Drug
Clerks Association, Intervenors.
 Nos. 81-7471, 81-7592.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Dec. 13, 1983.
Decided Feb. 13, 1984.
 
 Henry F. Telfeian, McLaughlin & Irvin, Norman Leonard, San Francisco, Cal., for petitioner.
 William R. Stewart, David R. Marshall, NLRB, Washington, D.C., Richard G. McCracken, Davis, Cowell & Cown, San Francisco, Cal., for respondent.
 Petition for Review of a Decision of the National Labor Relations Board.
 Before BROWNING, Chief Judge, GOODWIN, WALLACE, HUG, TANG, SCHROEDER, PREGERSON, POOLE, CANBY, NORRIS, and REINHARDT, Circuit Judges.
 HUG, Circuit Judge:
 
 
 1
 We ordered en banc review of this case to decide a narrow jurisdictional question: Does this court have jurisdiction to review a decision of the National Labor Relations Board ordering a representation election when that decision is based entirely on unfair labor practice findings that are also on review?
 
 
 2
 The panel initially hearing this case held that this court had jurisdiction to review the election order as well as the unfair labor practice order. Raley's, Inc. v. NLRB, 703 F.2d 410, 415-16 (9th Cir.1983). The panel stated that this conclusion was compelled by our prior decision in Anja Engineering Corp. v. NLRB, 685 F.2d 292 (9th Cir.1982), though the panel expressed disagreement with the conclusion. Raley's, 703 F.2d at 416 n. 3. We conclude that the panel's observation was correct and that we do not have jurisdiction to review the election order.
 
 
 3
 The facts are fully developed in the panel's opinion and need not be addressed in detail here. See id. at 412-13. The case involved a dispute between the Independent Drug Clerks Association and the Retail Clerks Union as to which union would represent certain Raley's employees. Following a representation election, the Retail Clerks filed charges with the National Labor Relations Board (the "Board"), alleging that Raley's had committed unfair labor practices in connection with the election. The Board found that Raley's had engaged in four election-related unfair labor practices in violation of 29 U.S.C. Sec. 158(a)(1). It ordered Raley's to cease and desist from those practices and to take certain remedial action. In addition, the Board ordered that the election be set aside and a new one conducted. The reviewing panel of this court affirmed as to three of the unfair practices and reversed as to the fourth. Id. at 414. Because it was unclear how these determinations would affect the Board's election order, the panel remanded the order to the Board for reconsideration in light of the remaining unfair labor practice findings.
 
 
 4
 After the panel's decision, Local 588 of the Retail Clerks Union requested to withdraw as a petitioner before the Board. Raley's and the Independent Drug Clerks Association contend this rendered the dispute over the election order moot since it precluded the holding of a second election. We disagree. The withdrawal of Local 588 did not deprive the dispute of its status as a live controversy. The two other union locals still actively contest the representation dispute and effective relief could still be granted as to those parties. Oregon Environmental Council v. Kunzman, 714 F.2d 901, 903 (9th Cir.1983); Bumpus v. Clark, 702 F.2d 826, 827 (9th Cir.1983). The Board's election decision therefore is not moot.
 
 
 5
 Our authority to review orders of the Board is granted by section 10(f) of the National Labor Relations Act, 29 U.S.C. Sec. 160(f). Section 10 governs unfair labor practice charges and permits persons aggrieved by final orders adjudicating such charges to petition for review in the courts of appeals. No part of section 10 regulates representation elections or authorizes our review of them.
 
 
 6
 Elections, on the other hand, are governed exclusively by section 9 of the Act, 29 U.S.C. Sec. 159. That section makes only limited reference to review by the courts of appeals, providing in subsection (d) that when an order of the Board charging an unfair labor practice is based in whole or in part upon a prior certification decision, the Board's certification record shall be referred to the court reviewing the unfair labor practice charge.
 
 
 7
 The Supreme Court has clearly interpreted this statutory scheme as barring the court of appeals from undertaking direct review of certification proceedings under section 9. Boire v. Greyhound Corp., 376 U.S. 473, 476, 84 S.Ct. 894, 896, 11 L.Ed.2d 849 (1964). Instead, the Court has held that the Act provides for review of the certification decision "only after the election has been held and the Board has ordered the employer to do something predicated upon the results of an election." A.F. of L. v. Labor Board, 308 U.S. 401, 411, 60 S.Ct. 300, 304, 84 L.Ed. 347 (1940) (quoting 79 Cong.Rec. 7658 (1935) (statement of Sen. Walsh)).
 
 
 8
 The question presented here is whether that statutory analysis changes when the order setting aside an election and ordering a new one is based on a pre-election unfair labor practice charge that is also before this court for review. We acknowledge that there is practical sense in the Anja holding that when the order requiring a new election is based upon the alleged unfair labor practice under review, judicial economy would perhaps be better served by a concurrent review of the election order. However, the Board's consolidation of the unfair labor practice charges with the certification proceedings cannot create appellate jurisdiction that was not granted by the statute. The Supreme Court in Boire clearly held that an election order is not a final order subject to direct appellate review under section 10(f) of the Act. Rather, appellate review is confined to the indirect route provided under section 9(d) of the Act. The Court recognized that this imposed significant delays in determining challenges to Board orders in certification proceedings, but noted that it was obvious that "Congress explicitly intended to impose precisely such delays." Boire, 376 U.S. at 477-78, 84 S.Ct. at 896-97.
 
 
 9
 Our decision today is in accord with those of the other circuits that have reviewed this question. See, e.g., Graham Architectural Prods. Corp. v. NLRB, 697 F.2d 534, 543 & n. 12 (3d Cir.1983); Custom Recovery, Division of Keystone Resources, Inc. v. NLRB, 597 F.2d 1041, 1046 (5th Cir.1979); NLRB v. Intertherm, Inc., 596 F.2d 267, 278 (8th Cir.1979); NLRB v. Monroe Tube Co., 545 F.2d 1320, 1329 (2nd Cir.1976); American Bread Co. v. NLRB, 411 F.2d 147, 156 (6th Cir.1969); NLRB v. Lifetime Door Co., 390 F.2d 272, 274 n. 3 (4th Cir.1968).
 
 
 10
 We vacate that portion of the panel's opinion assuming jurisdiction over the Board's election decision, overrule Anja Engineering Corp. v. NLRB, 685 F.2d 292 (9th Cir.1982) to the extent it is inconsistent with this opinion, and remand to the panel for modification of its order consistent with this opinion.
 
 
 11
 VACATED and REMANDED.
 
 PREGERSON, Circuit Judge, concurring:
 
 12
 I join the majority and concur with Judge Reinhardt, but write separately to outline the main reason, other than stare decisis, that compels the result we reach today.
 
 
 13
 The long-established rule is that the courts of appeals lack jurisdiction to review election-related unfair labor practices until the Board has held an election, certified a collective bargaining representative based on that election, and ordered the employer to bargain with the new representative. If the employer fails to do so, he commits what counsel for the Board at oral argument described as a "technical 8(a)(5)" violation--that is, an unfair labor practice for violating the duty to bargain, under 29 U.S.C. Sec. 8(a)(5) (1976), with the duly certified collective bargaining agent. Only in reviewing the Board's decision on a technical 8(a)(5) violation may we examine the unfair labor practices that took place during the election. See Boire v. Greyhound Corp., 376 U.S. 473, 476, 84 S.Ct. 894, 896, 11 L.Ed.2d 849 (1964); AFL v. NLRB, 308 U.S. 401, 411, 60 S.Ct. 300, 304, 84 L.Ed. 347 (1940).
 
 
 14
 The question in this case is whether the timing of our jurisdiction is any different when the union loses the election and the Board, finding unfair labor practices, orders a re-run election--but fails to conduct that re-run before the employer appeals the unfair labor practice charges stemming from the first election.
 
 
 15
 The answer is "no" because such an appeal should not come before us until the Board has held the re-run election. The proper time for us to hear objections to the Board's finding of election-related unfair labor charges is after a technical 8(a)(5) violation, but never before.
 
 
 16
 Congress knew that this rule would cause some delay in our reviewing election-related unfair labor practice charges. But in enacting National Labor Relations Act Sec. 9, 29 U.S.C. Sec. 159 (1976) (governing certification elections), Congress also recognized that the rule would avoid another, more serious type of delay: the delay in postponing the re-run election. See, e.g., 93 Cong.Rec. 6444 (1947) (remarks of Senator Taft, during Taft-Hartley debates, discussing Wagner Act), quoted in Boire, 376 U.S. at 479 & n. 9, 84 S.Ct. at 898 & n. 9.
 
 
 17
 The Wagner Act is designed to certify new bargaining representatives as quickly as possible. Until the Board has finally certified the union, nothing obligates the employer to sit down at the bargaining table and negotiate with the would-be bargaining representative. The longer the Board postpones holding a final, conclusive certification election, the more likely the employer will defeat the union. As employees come and go through normal attrition in the bargaining unit, the consensus that once existed about whether to elect a particular bargaining representative may disappear through delay.
 
 
 18
 In short, an employer can forestall the election--and postpone having to face a legitimate bargaining representative--simply by taking an interlocutory appeal that could produce delay and quietly dismantle the union's majority. Cf. Weiler, Promises to Keep: Securing Workers' Rights to Self-Organization Under the NLRA, 96 Harv.L.Rev. 1769, 1795-1803 (1983) (concluding that delayed implementation of remedies for election-related unfair labor practices reduces union victory rate). Congress recognized this, see, e.g., 93 Cong.Rec. 6444 (1947) (remarks of Senator Taft), quoted in Boire, 376 U.S. at 479 & n. 9, 84 S.Ct. at 898 & n. 9, and passed Sec. 9, which defers appellate jurisdiction over election-related unfair labor practice charges until the employer has committed a technical 8(a)(5) violation.
 
 REINHARDT, Circuit Judge, concurring:
 
 19
 I agree completely with Judge Hug's opinion. I would add only that there is good reason that Congress did not afford the courts jurisdiction over NLRB election orders. Congress intended that NLRB elections be conducted expeditiously and that they not be delayed by judicial proceedings. Employees come and go, and all too often those who seek union representation are no longer employed by election day. Congress feared that, given the opportunity, unsympathetic employers might seek to delay elections until the atmosphere and the electorate had been changed drastically. See A.F. of L. v. Labor Board, 308 U.S. 401, 410 n. 2, 60 S.Ct. 300, 304 n. 2, 84 L.Ed. 347 (1940) (quoting H.R.Rep. No. 1147, 74th Cong., 1st Sess. 6 (1935)). Thus, in sections 9 and 10 of the Taft-Hartley Act (originally the Wagner Act), Congress provided for elections first and litigation afterwards.
 
 
 20
 In light of the above, it is somewhat puzzling that although the employer has neither sought nor received any restraining order or other injunctive relief (and in fact could not have obtained any), the election has still not been conducted by the NLRB. In Anja, the election also was long delayed and had not been completed at the time of the proceedings before us. At oral argument the NLRB and the union, which are on the same side in this proceeding, offered conflicting explanations for the delay in holding the elections. It is not necessary to attempt to determine the true reason. All that need be said is that the failure to conduct elections prior to the conclusion of the unfair labor practice litigation seems to be contrary to the congressional scheme and to defeat the congressional purpose. I would add only that delay is appropriate in the limited circumstance in which the alleged unfair labor practices may have adversely affected the union's majority, the effects of that conduct have not been dissipated, and the labor organization involved requests that the election be delayed.